IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRIESING LAW, LLC<br>1880 John F. Kennedy Boulevard<br>Suite 1800<br>Philadelphia, PA 19103,<br><br>        Plaintiff,<br><br>   v.<br><br>KLEINBARD LLC<br>Three Logan Square<br>1717 Arch Street, 5th Floor<br>Philadelphia, PA 19103,<br><br>        Defendant | CIVIL ACTION NO.<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT IN CIVIL ACTION

This case involves Defendant Kleinbard LLC, a politically connected law firm with strong ties within the Commonwealth of Pennsylvania (the "Commonwealth"), that convinced Griesing Law, LLC, a small but highly qualified, certified women-owned and diverse law firm, to support its attempts to obtain business from the Commonwealth through its Request for Proposal ("RFP") process for legal services. Once the bids were won, Kleinbard cut Griesing Law out and lied to the Commonwealth about Griesing Law's ability and willingness to do the work. Kleinbard, and its lawyers, hold themselves out as particularly adept at representing those clients doing business with or having difficulties with state and local government entities within the Commonwealth. Kleinbard promotes itself as able to "work with clients proactively to identify potential government and quasi-government business relationships." Unfortunately, there is an ugly underbelly regarding Kleinbard's work for the Commonwealth that they do not mention in their promotional materials. Kleinbard discriminates against small, woman-owned, diverse businesses in violation

1

its contracts with the Commonwealth.   Kleinbard actively and repeatedly recruited Griesing Law to serve as its small diverse business contractor under Commonwealth RFPs and contracts for legal services but never intended to honor its contractual commitments to share the work, the experience and the revenue with Griesing Law, and never intended to abide by the Commonwealth's contractual non-discrimination provisions nor its required integrity policies.   Rather, once Kleinbard won the bids from the Commonwealth based on Griesing Law's involvement, Kleinbard knowingly concealed from Griesing Law the execution of various Commonwealth contracts for legal services, the assignment of work deriving from those contracts, and intentionally misled the Commonwealth as to Griesing Law's readiness, willingness and ability to provide legal services. Kleinbard's actions were specifically designed to discriminate against Griesing Law, as a women-owned because, just because it could.

Kleinbard breached its contracts with Griesing Law, breached its contracts with the Commonwealth to which Griesing Law is an intended third party beneficiary, tortiously interfered with Griesing Law's existing and prospective contractual relationships with the Commonwealth, and fraudulently and negligently misrepresented and/or omitted material facts.  All of this was done by Kleinbard to impermissibly induce Griesing Law to repeatedly agree to serve as Kleinbard's small diverse business subcontractor (a requirement by the Commonwealth to be eligible to participate in the RFP process) and to cover up work assigned to and performed by Kleinbard in which Griesing Law was entitled to participate and to be compensated.

## PARTIES

1.      Plaintiff, Griesing Law, LLC ("Griesing Law"), is a law firm operating as a single member limited liability company organized under the laws of the Commonwealth, with its principal place of business at 1880 John F. Kennedy Blvd., Suite 1800, Philadelphia, Pennsylvania

19103.  The sole member of Griesing Law is Francine Friedman Griesing, Esq., who is a citizen of, and domiciled in, the State of Florida.  She does not maintain a residence in Pennsylvania.

2.      Defendant Kleinbard LLC ("Kleinbard") is a law firm operating as a limited liability company organized under the laws of the Commonwealth, with its principal place of business at Three Logan Square, 1717 Arch St., 5th Floor, Philadelphia, Pennsylvania 19103. Upon information and belief, none of the equity members of Kleinbard are citizens of, or domiciled in, Florida.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over the instant action pursuant to 28 U.S.C. § 1332(a)(1) because this matter involves a controversy between citizens of different states and the amount in dispute exceeds $75,000.00.

4.      This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) because Kleinbard resides in the Eastern District of Pennsylvania and Griesing Law's principal place of business is in the Eastern District of Pennsylvania.

6.      Alternatively, venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to this action occurred in the Eastern District of Pennsylvania.

7.      Kleinbard is subject to general personal jurisdiction in the Commonwealth of Pennsylvania.

## BACKGROUND

### The Commonwealth's Procedures for Procurement of Goods and Services

8.       The Commonwealth routinely contracts for the provision of goods and services for the Commonwealth using a range of procedures including Requests for Qualifications, Requests for Proposals and sole sourcing through its supplier diversity process.

9.       Recognizing that certain types of businesses were historically underrepresented in the roster of businesses contracted by the Commonwealth for goods and services, on September 23, 2015, Governor Tom Wolf issued Executive Order 2015-11 (the "Executive Order"), which among other things, created initiatives to support and advance small diverse businesses, established the Bureau of Diversity, Inclusion and Small Business Opportunity ("BDISBO"), which operates as part of the Commonwealth Department of General Services ("DGS"), and created an Advisory Council on Diversity, Inclusion and Small Business Opportunities (the "Council"), and according to the BDISBO website "charged the Council with making recommendations for transformative changes to the Commonwealth's procurement protocols."

10.       BDISBO's website states: "Our primary mission is to actively, equitably and successfully engage small, disadvantaged and minority businesses in the Commonwealth's public procurement process as one of the ways to fuel our economy" and "[w]hether it involves the areas of compliance, certification/verification, policy, technical assistance or outreach and education, the BDISBO team stands ready to make your experience with the Commonwealth a positive and productive one."  Department of General Services, *Bureau of Diversity, Inclusion, and Small Business Opportunity*, https://www.dgs.pa.gov/bdisbo/Pages/default.aspx (last visited Aug. 12, 2022).

11.     The Commonwealth's website also states that the Vision of the agency is: "**BDISBO** facilitates an open, inclusive and accessible business environment where small businesses can develop or expand their competency, capacity and footprint in the Commonwealth marketplace." *Id.*

12.     The Council, which has three subcommittees – Inclusion & Certification, Program Goals & Metrics, and Training and Workplace Development, conducted a review of the Commonwealth's procurement protocols and made recommendations for expanding the participation of small and small diverse businesses in Commonwealth procurement.

13.     Governor Wolf also appointed an Advisory Board to BDISBO comprised of The Secretaries of DGS and, the Department of Transportation ("PENNDOT"), Community and Economic Development ("DCNR") and Labor & Industry ("L&I"), as well as a roster of geographically diverse private sector members.   One of the original members of the Council appointed by Governor Wolf, and upon information and belief remains on the Council, is George Burrell ("Burrell"), Of Counsel at Kleinbard and a member of Kleinbard's Government Relations Group.

14.     As part of its work, BDISBO in conjunction with the Council's input, created protocols to ensure that the RFP process include requirements that provided small diverse owned businesses, including woman and minority owned businesses, opportunities (i) to gain access to serve as prime contractors[1] for Commonwealth goods and services; and (ii) to serve as subcontractors to prime contractors for Commonwealth goods and services so that the diverse owned firms could share in the financial benefits of the prime contracts and also gain experience

---

[1] A prime contractor is also known as the offeror and is the main party responsible for ensuring technical compliance with the RFP requirements and has primary responsibility for the delegation of work to any small diverse subcontractor(s).

to enhance the small diverse firm's qualifications to serve as prime contractors under future Commonwealth contracts.

15.     Under the Executive Order, BDISBO is also responsible for the Commonwealth's Small Diverse Business ("SDB") Program, which "encourage[s] and ensure[s] open and equitable contracting practices are used by prime contractors in soliciting and contracting with small diverse … businesses during the Request for Proposal (RFP) process."  Department of General Services, *Small          Diverse          Business          Program          for          Procurement*, https://www.dgs.pa.gov/Small%20Diverse%20Business%20Program/Small-Diverse-Business-Procurement/Pages/default.aspx (last accessed Aug. 12, 2022).

16.     BDISBO has several other responsibilities with respect to the SDB Program including Compliance.  As BDISBO recognizes, "[o]ne of BDISBO's most important functions is to monitor the actions of program participants to ensure that they are honoring contractual commitments. Therefore, it is not lost upon [BDISBO] that any aspirational goals advanced the [NDOSBO] cannot be realized without some semblance of oversight and accountability."

17.     The Governor's Office of General Counsel ("OGC") participated in the RFP processes establishing detailed procedures for responding to OGC RFPs for legal services. This process included scoring RFP applicant firms on the basis of technical skills, cost and diversity (including the percentage of the prime contractor's contractual commitment to a certified small diverse business as subcontractor).  If an RFP applicant firm did not meet the diversity requirements, it was almost impossible that they would be awarded the RFP contract from OGC.

18.      Commonwealth then-General Counsel, Denise Smyler, contacted Griesing Law Managing Member Francine Friedman Griesing directly requesting that Griesing Law apply for the approved list of certified diverse owned legal service providers as "a favor" to the  Office of

General Counsel ("OGC") because there were a limited number of qualified woman or diverse owned providers and certain majority owned firms were specifically requesting of the OGC that Griesing Law be accepted as their diverse subcontractor for legal work through the new RFP process. Griesing Law was thereafter approved as a small diverse owned business eligible to apply to be appointed for legal services as a prime contractor or as a subcontractor to another prime contractor.

19.    Since the issuance of the Governor's Executive Order, Griesing Law has been appointed as either a prime contractor, a subcontractor or both pursuant to several OGC RFPs and expects to receive additional appointments in the future.

20.    The Commonwealth requirements for prime contractors to commit to a minimum utilization of woman and diverse owned firms have been modified over time to assure that diverse firms receive their fair share of the work.   One recurring issue was the lack of notice to subcontractors, such as Griesing Law, when an RFP was awarded to a prime firm authorizing the OGC to enter contracts with the selected primes. OGC then began to also give notice to subcontractors to which prime applicants had contractually committed a minimum percentage of the work and fees to assure primes did not withhold work from their diverse subcontractors. Department of General Services, *supra* ¶ 10.

21.    However, that notice alone has not solved the problem of subcontractors such as Griesing Law being cut out of work by primes because if work is actually awarded to the prime following the RFP selection process, the subcontractor is not notified directly. Only and unless the prime informs them, the subcontractor is unaware work was assigned which they are entitled to perform and for which they are entitled to be paid.

22.     To further tackle this issue of primes failing to honor their commitment to share a certain percentage of work with their small diverse business subcontractors, BDISBO implemented PRiSM Compliance Management on or about September 3, 2019. The Commonwealth launched the PRiSM system to, among other things, track whether prime contractors fulfilled their commitments to SDB subcontractors.

23.     The PRiSM system was intended to require prime contractors to report quarterly the fees they received from the Commonwealth and the fees they paid to their SDB contractors and requiring SDB subcontractors to confirm amounts received from the primes.  Unfortunately, the PRiSM system is not accurate and/or up-to-date so subcontractors, such as Griesing Law, cannot rely on it to ascertain whether they are being shut out by primes.

24.     The RFP process was also modified to require the prime and subcontractor include, as part of the RFP submission, the Commonwealth's Appendix G Small Diverse and Small Business Letter of Intent ("Letter of Intent") setting out the agreement between them as to the percentage of work to be performed by the subcontractor and the attendant fees to be paid to the subcontractor.  In the absence of an executed Letter of Intent with a small diverse business in the RFP submission, the prime must explain its efforts to secure a diverse subcontractor and why it was unable to do so. The lack of a small diverse business subcontractor can bar a prime from being awarded a contract. These protocols were implemented specifically to protect small diverse subcontractors from primes that do not inform subcontractors of awarded work, do not pay them as agreed, or otherwise do not honor the Letters of Intent.

25.     Despite these requirements intended to protect small diverse subcontractors such as Griesing Law—which the BDISBO promulgated based on the guidance from the Council on which Kleinbard lawyer Burrell served and upon information and belief continues to serve—Kleinbard

time and again engaged in a premediated scheme to recruit Griesing Law as a SDB subcontractor for OGC RFPs without intending to actually afford Griesing Law the opportunity to perform the work to gain the additional experience or the compensation to which the Griesing Law was entitled. Instead, Kleinbard engaged in a further scheme to conceal from Griesing Law work awarded to it under OGC RFPs in which Griesing Law was the designated subcontractor, and to intentionally and repeatedly mislead Griesing Law by failing to disclose that work was performed, by contending that the work was paused or that when it resumed Kleinbard would assure that Griesing Law had the opportunity to participate at the contractually mandated amount.

26.     Further, the assurances by Kleinbard were made to Griesing Law principally by BDISBO Council member and Kleinbard lawyer Burrell.  Plainly, from his prior legal experience, as explained more fully below, and his role on the BDISBO Council, Burrell understood Kleinbard's obligations to the Commonwealth and to Griesing Law and deliberately flouted them.

27.     Notably, without soliciting the participation from a small diverse subcontractor such as Griesing Law, Kleinbard would not have been awarded any of the contracts under the Commonwealth program.

**Kleinbard Advertises its Expertise in Doing Business, and Having Relationships with, the Commonwealth and Elected Officials While Fraudulently Inducing the Commonwealth and SDB Griesing Law to Enter Contracts Intending to Breach Them**

28.     Kleinbard is a 35-plus attorney law firm based in Philadelphia, which holds itself out as unique in its expertise and relationships to benefit clients either seeking to do business with the Commonwealth or adverse to the Commonwealth, particularly touting its own representation of elected officials across Pennsylvania.

29.     On the Kleinbard website homepage, it lists the following nine practice areas: Business & Finance, Employment, Government Relations, Intellectual Property, Litigation, Political Law, Real Estate & Finance, Taxation and Trusts & Estates. Of particular relevance to the matters at issue in this case are Government Relations and Political Law.

30.     When you turn to the Kleinbard Government Relations webpage, it states that: "Due to our familiarity with the decision makers and their operations, we are able to assist clients by maximizing their chances of success through specific processes, whether it be requests for qualifications, requests for proposals, or negotiated contracts."

31.     That same page identifies Kleinbard Attorney Hyman as Practice Leader, and identifies five "Related Practices": Business Development, Lobbying, White Collar Litigation & Government Investigations, Legislative Monitoring & Analysis, and Political Law.

32.     Kleinbard Attorney Hyman appears to be well qualified to lead the Government Relations Practice Group, as well as the Business Development, Lobbying, and Legislative Monitoring & Analysis Practice areas, which he also leads for Kleinbard, having over 40 years of legal experience, including previously serving as a Kleinbard Managing Partner from 2004-2017.

33.     In publicizing Hyman's qualifications, the Kleinbard website states in part:

> David provides representation to a broad range of clients in matters where state and/or government presents an obstacle or an opportunity. On a daily basis, he interacts with elected and appointed officials in Philadelphia, the region and Harrisburg.
>                * * *
> Throughout his career, David has developed strong ties with state and local officials and has a deep understanding of their priorities and approaches to public affairs.

34.     Hyman also leads the Business Development Group at Kleinbard.  The Kleinbard website describes that practice as follows:

We work with clients proactively to identify potential government and quasi-government business relationships.  In some instances, this requires educating public sector entities about services that might benefit them.  *Due to our familiarity with the decision makers and their operations, we are able to assist clients by maximizing their chances of success through specific processes, whether it be requests for qualifications, requests for proposals, or negotiated contracts*.  Supported by strategic planning, our clients are best positioned to take advantage of the "right" opportunities when they arise. (Emphasis added.)

35.     Burrell, also a senior member of the Government Relations Practice Group at Kleinbard and BDISBO Council member, is a former member of Philadelphia City Council, and served in high ranking positions for two Mayors of Philadelphia.  According to the Kleinbard website, "George's work with two African-American-owned businesses with national reputations has positioned him to understand the unique challenges faced by minority- and women-owned companies."

36.     Notably, Kleinbard is touting that it represents clients in obtaining business from the Commonwealth and that it has experience with the RFP and contracting process. Given the Executive Order and BDISBO's SDB mandates, both Hyman and Burrell understand the contractual obligations owed by a prime contractor to a SDB subcontractor under Commonwealth contracts.

37.     Kleinbard's webpage highlighting its Political Law Practice, is led by Matthew H. Haverstick, Kleinbard Managing Partner, Litigation, also reflects Kleinbard's experience in government matters and relationships with government officials.  According to the Kleinbard website:

Referred to in media reports as "counsel of choice for state Republicans in a number of recent policy fights" for his work on matters that garner national press attention, Matt has a strong understanding of local, state, and federal governments, their stakeholders, and the media.

11

38.     The Political Law Practice, working in tandem with the Government Relations

Practice,  includes:

> Our clients range from government officials and corporations engaged in the political
> process, to candidates and individuals seeking to comply with regulatory requirements.
> Our lawyers have a unique understanding of the intersection of legal compliance and
> practical reality.  We work with our political and government clients to craft
> commonsense solutions, navigate the law and deliver results.
>
> *  *  *
>
> We serve public officials and governmental employees throughout the lifecycle of
> their political careers. . . .

39.     The White Collar Criminal Defense & Government Investigations Practice Group

at Kleinbard also led by Haverstick, touts its government expertise and relationships with top

officials in Harrisburg.  For example, according to the webpage for that practice area:

> On a daily basis, our attorneys interact with elected and appointed officials in
> Pennsylvania. Through our relationships with government officials, we have
> developed an understanding of policy politics and process. . . .
>
> Kleinbard has developed deep connections with governing bodies, including the
> Pennsylvania State Treasurer and the State Senate Republican Caucus, and regularly
> advise clients on public policy matters. … In addition we regularly provide guidance
> on ethics compliance and on developments in, and changes to, the Right-to-Know Law
> and its continually evolving body of caselaw. . . .

40.     The connections between Kleinbard and the Pennsylvania State Treasurer (the

"Treasurer" are notable.  According to the  Pennsylvania Treasury e-Marketplace website, between

2016-2020, Kleinbard was approved for legal and litigation services to the Department for fees

totaling nearly $1.4 million. Notably, the contracts do not specify that any of those fees were

earmarked for SDB subcontractors, but the contract documents reflect that Kleinbard was bound

by nondiscrimination and integrity provisions, that were not limited to conduct under the specific

contract.

41.     The contract documents between the Treasurer and Kleinbard provide among other things:

> Nondiscrimination Clause
> During the term of this contract, the Contractor agrees as follows:
> 1. Contractor shall not discriminate against any … independent contractor, or any other person because of … sex.
> * * *
> Contractor Integrity Clause
> 2. The contractor shall maintain the highest standards of integrity in the performance of this agreement and shall take no action in violation of state or federal laws, regulations, or other requirements that govern contracting in the Commonwealth.

42.     During the term of the Kleinbard contracts with the Treasury Department from 2016- 2020, Kleinbard discriminated against Griesing Law as its SDB subcontractor on the basis of sex and in breach of its Commonwealth contracting obligations and did not act with the highest standards of integrity.

43.     Indeed, the Kleinbard website is replete with examples of the team's experience and relationships with elected and appointed officials in Harrisburg and across Pennsylvania and how they employ those relationships to enhance client opportunities. Kleinbard deployed their stated deep expertise and extensive relationships, to devise a scheme to defraud the Commonwealth and to defraud Griesing Law as its SDB subcontractor as described in this Complaint.

**Kleinbard Repeatedly Recruits Griesing Law as its Diverse Subcontractor**

44.     During the period from July 2015 through the filing of this action, Griesing Law agreed to serve as Kleinbard's SDB subcontractor on at least eight separate RFPs and the parties executed Letters of Intent which Kleinbard included in its RFP submissions to the Commonwealth. Although Kleinbard has been awarded significant work pursuant to contracts issued under RFPs

in which Griesing Law was the designated SDB subcontractor, Kleinbard has almost exclusively excluded Griesing Law from participating in the work or sharing in the fees.

45.     Instead, Kleinbard engaged in a scheme to conceal from Griesing Law that work had been assigned to Kleinbard and that Kleinbard had collected substantial fees without sharing the work or fees with Griesing Law.  This deprived Griesing Law of the opportunity to develop or expand its experience and to collect the fees to which it was entitled.

46.     On or about July 10, 2015, and again on or about July 14, 2015, Griesing Law Managing Member Francine Griesing and Kleinbard Practice Leader, Government Relations, David L Hyman and Steven J. Engelmyer, partner and former chair of Kleinbard's Litigation Department, had multiple conversations about the two firms working together in a subcontractor/prime relationship, respectively, for the Commonwealth.

47.     Griesing Law and Kleinbard first intended to work together on RFP OLRSF-2015-1 for Insurance Receivership Counsel.  The two firms mutually signed a Letter of Intent dated July 18, 2015 that stated in relevant part:

> If Kleinbard, LLC is the successful vendor, Griesing Law, LLC shall provide litigation and transactions legal services as needed....
>
> These services shall represent 20% of the total cost of Kleinbard, LLC's cost submittal. . . and it is expected that Griesing Law, LLC could receive an estimated $123,750 based on Kleinbard LLC's cost submittal.

A true and copy of the Letter of Intent, to the Kleinbard submission is response to RFP OLRSF-2015-1 is attached hereto as Exhibit "A" and incorporated by reference as fully set forth herein.[2]

48.     However, the Commonwealth ultimately cancelled that RFP on or about August 5, 2015.

---

[2] The exhibits to this Complaint have been redacted to remove information that is not otherwise publicly available.

14

49.     On or about August 20, 2015, Kleinbard Attorney Hyman called and emailed Griesing Law about working together on the Commonwealth's RFP relating to Reliance Insurance Company.  Kleinbard and Griesing Law submitted together to work on this RFP, however, on or about December 15, 2015, Kleinbard learned that it had not been selected by the Commonwealth.

50.     On or about September 15, 2015, Kleinbard again contacted Griesing Law to serve as Kleinbard's subcontractor in connection with Commonwealth RFP OGC-2015-39 related to First Sealord Surety. Kleinbard and Griesing entered a Letter of Intent, dated September 15, 2015, following the Commonwealth OGC form as required, whereby Kleinbard committed, in part, to the following:

> If Kleinbard LLC is the successful vendor, Griesing Law, LLC shall provide litigation and transactions legal services as needed...
>
> These services represent 20% of the total cost in Kleinbard LLC's cost submittal for the initial term of the contract.  Dependent on final negotiated contract pricing and actual contract usage or volume, it is expected that Griesing Law, LCC could receive an estimated $59,125.00 during the initial contract term.

A true and copy of the Letter of Intent, to the Kleinbard submission is response to RFP OGC-2015-39 is attached hereto as Exhibit "B" and incorporated by reference as fully set forth herein.

51.     On or about June 1, 2016, Kleinbard Attorney Hyman emailed Griesing Law Managing Member Francine Griesing to again partner with them on another Commonwealth RFP and for Griesing Law to serve as Kleinbard's subcontractor in connection with Commonwealth RFP OGC-2016-09 for Complex Litigation & Litigation Consultants. Kleinbard and Griesing entered a Letter of Intent, dated June 21, 2016, following the Commonwealth OGC form as required, whereby Kleinbard committed, in part, to the following:

> If Kleinbard is the successful vendor, Griesing Law, LLC shall provide complex litigation and litigation consulting services …
>
> These services represent **20% of the total cost** in Kleinbard LLC's cost submittal of the initial term of the contract … it is expected that Griesing Law, LLC will receive an estimated 20% of the billable work during the initial contract term.

A true and copy of the Letter of Intent, to the Kleinbard submission is response to RFP OGC-2016-09 is attached hereto as Exhibit "C" and incorporated by reference as fully set forth herein.

52.     On or about August 2, 2016, Kleinbard again contacted Griesing Law to serve as Kleinbard's subcontractor in connection with Commonwealth RFP OGC-2016-16 related to Insurance Receivership Counsel Legal Services. Kleinbard and Griesing entered a Letter of Intent, dated August 10, 2016, following the Commonwealth OGC form as required, whereby Kleinbard committed, in part, to the following:

> If Kleinbard is the successful vendor, Griesing Law, LLC shall provide support legal services to Kleinbard's insurance receivership team…
>
> These services represent **20% of the total cost** in Kleinbard LLC's cost submittal of the initial term of the contract … it is expected that Griesing Law, LLC will receive an **estimated $52,750.00 during the initial contract term.**  (Emphasis added.)

A true and copy of the Letter of Intent, to the Kleinbard submission is response to RFP OGC-2016-16 is attached hereto as Exhibit "D" and incorporated by reference as fully set forth herein.

53.     On or about November 14, 2016, OCG informed Kleinbard, with a copy to Griesing Law, that Kleinbard had been appointed to be eligible for work under OGC-2016-09.   The appointment letter stated in part that "It is understood that you will be subcontracting with Griesing Law, LLC throughout the timeframe of any engagement."   A true and copy of the November 14, 2016 Appointment Letter for OGC-2016-09 is attached hereto as Exhibit "E" and incorporated by reference as fully set forth herein.

54.     On or about November 22, 2016, Kleinbard contacted Griesing Law to serve as Kleinbard's subcontractor in connection with Commonwealth RFP OGC-2016-22 General Litigation & Emergency Council. Kleinbard and Griesing entered a Letter of Intent, dated November 22, 2016, following the Commonwealth OGC form as required, whereby Kleinbard committed, in part, to the following:

> If Kleinbard is the successful vendor, **Griesing Law, LLC shall provide** general litigation and emergency counsel support services. . . .These services represent **20% of the total cost** in Kleinbard LLC's cost submittal of the initial term of the contract … it is expected that Griesing Law, LLC will receive an **estimated $52,750.00 during the initial contract term.**  (Emphasis added.).

A true and copy of the Letter of Intent, Appendix G to the Kleinbard submission is response to RFP OGC-2016-22 is attached hereto as Exhibit "F" and incorporated by reference as fully set forth herein.

55.     On or about May 3, 2017, OCG informed Kleinbard, with a copy to Griesing Law, that Kleinbard had been appointed to be eligible for work under OGC-2016-22.  The OGC considered the Letter of Intent in appointing Kleinbard as a firm eligible to provide legal services under the RFP. Appointment alone under the RFP process does not guarantee that work will be assigned to the prevailing firm(s).  A true and copy of the May 3, 2017 Appointment Letter for OGC-2016-22 is attached hereto as Exhibit "G" and incorporated by reference as fully set forth herein.

56.     By email dated August 1, 2019, Kleinbard Attorney Burrell emailed Griesing Law Managing Member Francine Griesing stating that Kleinbard was "renewing our complex litigation response to the commonwealth which is due in about two weeks….This is to confirm your continued participation as co-counsel in our response."  Shortly thereafter, Kleinbard sent Griesing Law a Letter of Intent related to Commonwealth OGC-2019-10 which stated that Griesing Law

would receive 20% of any awarded work.  A true and copy of the August 8, 2019 Letter of Intent for OGC-2019-10 is attached hereto as Exhibit "H" and incorporated by reference as fully set forth herein.

57.     On or about December 11, 2019, OCG informed Kleinbard, with a copy to Griesing Law, that Kleinbard had been appointed to be eligible for work under OGC-2019-10/13.  The appointment letter stated in part that "It is understood that you will be subcontracting with Griesing Law, LLC throughout the duration of this engagement."  A true and copy of the December 11, 2019 Appointment Letter for OGC-2019-10/13 is attached hereto as Exhibit "I" and incorporated by reference as fully set forth herein.

58.     In early 2020, Kleinbard again sought Griesing Law as its diverse subcontractor on another Commonwealth RFP for the Pennsylvania Insurance Department.  On or about February 12, 2020, Kleinbard sent Griesing Law a Letter of Intent related to Commonwealth OGC-2020-01 which stated in part:

> If Offeror is the successful vendor . . . **Griesing Law, LLC shall provide** supporting legal services to Kleinbard's insurance receivership team.
>
> These services represent **20% of the total cost** in Kleinbard LLC's cost submittal of the initial term of the contract . . . it is expected that Griesing Law, LLC will receive an **estimated $52,150.00 during the initial contract term.**  (Emphasis added.)

A true and copy of the February 12, 2020 Letter of Intent for OGC-2029-01 is attached hereto as Exhibit "J" and incorporated by reference as fully set forth herein.

**Kleinbard Defrauds Griesing Law by Concealing Awarded Work
Under RFP OGC-2016-22**

59.     When OGC does assign work to a prevailing firm under an RFP, OGC only notifies the prime firm, such as Kleinbard, but does not notify the subcontractor, such as Griesing Law.  If the prime firm does not notify the subcontractor, the subcontractor is not aware that work has been assigned.

60.     The PRiSM system for monitoring payments to subcontractors to assure compliance was not in place in 2017 when OGC-2016-09 or OGC-2016-22 were awarded or during the initial years when Kleinbard performed work for the Commonwealth and therefore was not available for Griesing Law to use as a resource.

61.     The standard OGC Contract for legal services requires that the prime contractor and the subcontractor abide by nondiscrimination provisions and by integrity provisions. As explained below, Kleinbard breached its obligations to the Commonwealth and to Griesing Law under the SDB commitment, nondiscrimination and integrity provisions of their contracts with the Commonwealth and subcontracts with Griesing Law as its SDB.  Kleinbard acknowledged and agreed to be contractually obligated to these nondiscrimination and integrity provisions no less than eight (8) times.

62.     At some point after OCG-2016-22 was awarded in May 2017, the OGC assigned legal work to Kleinbard thereunder for an important project under Contract OGC-2017-GLE-22 (the "OGC Kleinbard Contract").[3] The OCG Kleinbard Contract expressly required that Kleinbard honor its subcontract with Griesing Law and assure that Griesing Law had the opportunity to perform at the designated percentage identified in the Letter of Intent.

---

[3] To protect client confidentiality, the legal work assigned under the OGC Kleinbard Contract is referred to herein as the "OGC Kleinbard Project."

63.     Kleinbard did not notify Griesing that it had entered the OGC Kleinbard Contract when it occurred nor was Griesing Law provided a copy of the contract until it requested it from OGC in August 2022.

64.     After Kleinbard had begun work on the OGC Kleinbard Project, on or about October 2, 2018, Kleinbard invited Griesing Law to meet at Kleinbard's offices to discuss the OGC Kleinbard Project.

65.     At that initial meeting on October 31, 2018, Griesing Law learned that Kleinbard had been providing legal services pursuant to the OGC Kleinbard Contract for some time.

66.     Griesing Law also learned directly from BDISBO Council member and Kleinbard attorney Burrell that "the client" wanted to be sure that the use of two law firms did not increase the legal expenses on the OGC Kleinbard Contract.

67.     During that October 31, 2018 meeting, Burrell repeatedly told the Griesing Law team that he had a "close relationship with the Governor," that he was meeting regularly with top level Commonwealth officials, and that he would discuss with them Griesing Law's role in providing legal services under the OGC Kleinbard Contract and report back.

68.     Thereafter, Kleinbard assigned Griesing Law a modest amount of work but did not permit Griesing Law to submit an invoice for the work.

69.     Griesing Law regularly followed up with Kleinbard expressing readiness, willingness and ability to continue to work on the OGC Kleinbard Project consistent with the Letter of Intent.

70.     Kleinbard engaged in a scheme to deprive Griesing Law of the promised share of the legal services and fees under the Letter of Intent and the OGC Kleinbard Contract as required by Commonwealth RFP OGC-2016-22.

71.     In order to determine whether it has the opportunity to perform its share of work assigned to prime contractor law firms by the OGC, Griesing Law routinely contacted BDISBO because the information was not always posted on PRiSM.  Griesing Law usually communicated with BDISBO Equal Opportunity Manager, Curtis Burwell.

72.     In early April 2019, Griesing Law contacted Burwell to inquire about OGC-2016-22.  Griesing Law was informed that Burwell would look into the status of this RFP and any assigned work.  Griesing Law followed up several times over the next two months with Burwell.

73.     On June 17, 2019, Burwell confirmed that Kleinbard had been paid for work on OGC-2016-22.  In response, Griesing Law sought assistance from Burwell on our ability to submit for the work we performed in late 2018/early 2019 since Kleinbard never gave Griesing Law authority to submit an invoice for such work.

74.     At Burwell's suggestion, Griesing Law again contacted Kleinbard about OGC-2019-22 but was again told to hold off on submitting any invoice.  Griesing Law then again solicited the help of Burwell and on or about July 10, 2019, Burwell informed Griesing Law that he had reached out to Kleinbard and was awaiting a response.

75.     After Burwell reached out to Kleinbard, Kleinbard contacted Griesing Law to inform us that we could submit our invoice for the work performed in late 2018/early 2019.  Kleinbard paid Griesing Law on or about September 17, 2019 in the amount of $4,314.68, of which $4,305 constituted legal fees.

76.     At some point during this period, Burwell contacted Griesing Law to confirm whether the Firm had declined to provide services on the OGC Kleinbard Project, informing Griesing Law that Kleinbard had told him that Griesing Law was unable or unwilling to perform.  Griesing Law told Burwell that was false and that Griesing Law had repeatedly followed up with

Kleinbard to be given the opportunity to perform its share of the work on the OGC Kleinbard Project.

77.     Burwell told Griesing Law that he would inquire further and follow up with us. Thereafter, Burwell informed Griesing Law, and has since reiterated several times, that under SDB subcontracts, the prime did not have to allocate the contracted percentage of work or fees evenly over the course of the prime contract.  Burwell further stated that primes such as Kleinbard only had to assure that by the time the contract was completed, the SDB subcontractor had been afforded the opportunity to perform its contracted percentage and the SDB subcontractor be paid at least its minimum guaranteed percentage of fees or more commensurate with the work performed.

78.     Burwell informed Griesing Law that Kleinbard had assured BDISBO that Kleinbard would honor its contractual obligations to Griesing Law as to the OGC Kleinbard Contract and that Kleinbard would assure that Griesing Law was given the opportunity to participate in the legal services and receive the minimum guaranteed fees as mandated by the Letter of Intent and the OGC Kleinbard Contract.

79.     On or about August 7, 2019, Kleinbard lawyer Burrell invited Griesing Law to attend an August 22nd client meeting in Harrisburg regarding the OGC Kleinbard Project.  In an email on August 15, 2019, Burrell informed Griesing Law that the *only* purpose of the meeting was to introduce a new Kleinbard attorney to the client and that no substantive matters would be discussed.  Griesing Law then declined to attend the meeting since it was administrative in nature only.

80.     Despite assurances that it would include Griesing Law in any work related to the OGC Kleinbard Project, Kleinbard continued to perpetuate its scheme to cut Griesing Law out of the legal services, work experience, and legal fees and discriminate against Griesing Law on the

basis of its women-owned status in violation of its contractual obligations.

81.     During the period July 2019 through April 2022, Griesing Law followed up with Kleinbard attorney Burrell not less than six (6) times regarding any additional work being assigned under the OGC Kleinbard Project and each message was either flatly ignored or a vague non-response was given.

82.     In or about May 2022, Griesing Law again sought the assistance of BDISBO through Burwell regarding the OGC Kleinbard Project.  On or about June 3, 2022, Burwell informed Griesing Law that he had contacted Kleinbard but that Kleinbard failed to respond to him.

83.     After contacting the Commonwealth OGC directly for assistance in or around June 2022, Griesing Law recently learned that Kleinbard had been paid at least $125,000 on RFP OGC-2016-22, to which Griesing Law was entitled at least 20% based upon the Letter of Intent.

## Kleinbard Continues to Conceal Other Awarded Work

84.     Griesing Law recently learned from the Commonwealth OGC that OGC entered two additional agreements with Kleinbard relating to the OGC Kleinbard Project, both of which required Kleinbard to provide Griesing Law the opportunity to share in a minimum 20% of the work and 20% of the fees.

85.     Kleinbard never notified Griesing Law of these two contracts, and Griesing Law first learned about them and received copies from the Commonwealth on August 11, 2022.  The first contract is dated December 11, 2019 and the second contract is dated March 1, 2020. These contracts were entered during the interval when Kleinbard insisted that no work was proceeding on the OGC Kleinbard Project. During this interval, Kleinbard was assuring Griesing Law that when the OGC Kleinbard Project resumed, Kleinbard would give Griesing Law the opportunity to

provide legal services to meet the 20% minimum requirement and receive the attendant fees including enough work so that Kleinbard could make up for the deficit in allocation of work in the earlier phases.

86.     The December 11, 2019 Contract for Legal Services between OGC and Kleinbard (the "December 2019 OGC Kleinbard Contract") was issued pursuant to OGC-2019-CLLC-23, and was signed on the same date that the OGC issued its RFP appointments pursuant to two RFPs, OGC-2019-10 and OGC-2019-13 relating to Complex Litigation and Legal Services.   Upon information and belief, the two RFPs were consolidated into RFP OGC-2019-10/13 and under contract number OGC-2019-CLLC-23. The appointment memorandum specifically states that:

> Kleinbard LLC is committed to subcontracting with one (1) small diverse firm, Griesing Law, LLC, for legal services over the entire engagement timeframe. Kleinbard, LLC is committing **20%** of the total value of its offering to **Griesing Law, LLC.** (Emphasis in original.)

87.     The December 2019 OGC Kleinbard Contract expressly provided, among other things:

> 28.     <u>Compliance with Small Diverse Business Requirements</u>. Commitments to Small Diverse Businesses made at the time of the proposal submittal or contract negotiation must be maintained by the Law Firm throughout the term of the Contract. Any proposed change must be submitted to the [DGS, BDISBO], which will make a recommendation as to a course of action to the [OGC]. …

88.     BDISBO and OGC have informed Griesing Law that Kleinbard did not make a request to change or deviate from its commitment to Griesing Law for 20% participation and neither BDISBO or OGC approved any change or deviation.

89.     Paragraph 28 of the December 2019 OGC Kleinbard Contract also required Kleinbard to "complete the Prime Contractor's Quarterly Utilization Report or a similar document and submit the report to OGC and DGS, BDISBO within ten working days of the end of each quarter" the December 2019 OGC Kleinbard Contract is in effect. Griesing Law was unable to

find a record of such reports being filed on the PRiSM system.

90.     On March 1, 2020, OGC and Kleinbard entered an engagement letter flowing from OGC-2019-23 and the December 2019 OGC Kleinbard Contract, whereby the OGC engaged Kleinbard to provide additional services on the OGC Kleinbard Project to begin immediately (the "March 1 OGC Kleinbard Engagement Letter"). The March 1, 2020 OGC Kleinbard Engagement Letter incorporated by reference the December 2019 OGC Kleinbard Contract, which in turn mandated that Kleinbard comply with the SDB commitment to Griesing Law.

91.     Kleinbard concealed the December 2019 OGC Kleinbard Contract and the March 1 OGC Kleinbard Engagement Letter from Griesing Law, perpetuating its continuing misrepresentation that the OGC Kleinbard Project was on hold and that there was not ongoing work in which Griesing Law could participate.

92.     Griesing Law recently became aware that Kleinbard had received fees pursuant to the December 2019 OCG Kleinbard Contract of at least $138,000.00 of which Griesing Law is owed 20% or $27,600, plus interest from the time payment was made to Kleinbard. This information is not ascertainable from any public source and was provided to Griesing Law by OGC on August 2, 2022.

93.     Griesing Law was recently informed by the Commonwealth OGC that the OGC had assigned work to Kleinbard pursuant to OGC-2016-09 and that OGC and Kleinbard entered into Contract No. OGC-2019-CLLC-23 (the "Second OGC Kleinbard Contract"), and that Kleinbard received at least $85,000 for legal services thereunder. OGC confirmed that as the SDB contractor Griesing Law should have been afforded the opportunity to perform at least 20% of the work and received at least 20% of the fees or more commensurate with the work and is owed at least $17,000, plus interest at 6% since the time of payment to Kleinbard.

94.     In connection with each Letter of Intent between Griesing Law and Kleinbard, Griesing Law provided Kleinbard with materials reflecting Griesing Law's experience and qualifications to perform legal services outlined in each OGC RFP even though under the Commonwealth's RFP program, only the prime firm needed to have the requisite experience and qualifications to meet the technical requirements of an RFP.

95.     At all relevant times, Griesing Law repeatedly informed Kleinbard that it was ready, willing and able to meaningfully participate in any awarded work and that it had the qualifications and expertise to participate fully.

**Kleinbard Deliberately Fails to Respond to Griesing Law, BDISBO or OGC**

96.     Despite Burrell's representation to Ms. Griesing, Kleinbard never contacted Griesing Law to perform work under any of the Letters of Intent or the Commonwealth OGC contracts which Kleinbard signed committing to the Commonwealth that Kleinbard would provide Griesing Law as the SDB the opportunity to participate in the legal services work.

97.     Ms. Griesing followed up with Kleinbard Attorney Burrell by email to inquire about whether there was any work that Griesing Law could perform on the purportedly deferred OGC Kleinbard  Project or under the Second Letter of Intent, which Griesing Law later learned from OGC had led to a Second OGC Kleinbard Contract.

98.     On March 10, 2022, Ms. Griesing contacted Kleinbard Attorney Burrell about the OCG Kleinbard Project as well as OGC-2021-09 (relating to Bedivere Insurance Company Receivership Estate Counsel).

99.     On March 14, 2022, Ms. Griesing received the following response from Burrell: "Have confirmed no work has been assigned on the Bedivere matter. I will check with the state to get update. Will connect on [OGC Kleinbard Project] as soon as I get internal update. GRB."

100.    Ms. Griesing followed up by email to Burrell on March 31 and April 27, but did not receive a further response.

101.    During this period, Griesing Law was in contact with BDISBO representative Burwell to enlist BDISBO's assistance in assuring that Kleinbard comply with its contractual requirements to the Commonwealth and to Griesing Law with respect to the OCG Kleinbard Project. Burwell informed Griesing Law that he contacted Kleinbard about these issues and that no one from Kleinbard had responded to him.  Burwell requested that he be copied on any demand letter to Kleinbard from Griesing Law.

102.    By letter dated June 3, 2022, Griesing wrote to Kleinbard Attorneys Burrell and Steven J. Engelmyer, who had signed First Letter of Intent on behalf of Kleinbard, and sent a copy to Burwell.  The letter outlined the many prior communications and requested payment of the amounts Griesing Law then knew were due under the OGC Kleinbard Contract and requesting documents reflecting all payments to Kleinbard so that Griesing Law could determine the amounts owed to it. A true and correct copy of the June 3, 2022 letter is attached hereto as Exhibit "K" and incorporated by reference as if fully set forth herein.

103.    Among other things, the June 2, 2022 letter stated:

> Plainly, as a law firm, you are required to maintain current time records and bills to the Commonwealth that should reflect the work performed on the [OCG  Kleinbard Project]. We can only surmise that you have failed to respond to me because you are aware that Kleinbard did not afford Griesing the opportunity to do the work as agreed and that you received and retained fees to which our firm was entitled.

104.    The letter requested a response by June 10, 2022; Griesing Law never received a response from Kleinbard.

105.    On June 27, 2022, Griesing Law wrote to the OGC, to Commonwealth General Counsel Gregory G. Schwab and Deputy General Counsel Rodney R. Akers about Kleinbard's failure to honor its SDB obligations to Griesing Law and situations in which it appeared that other

prime contractor law firms had breached their contracts with the Commonwealth and Griesing Law as to SDB participation. A true and correct copy of the June 27, 2022 letter is attached hereto as Exhibit "L" and incorporated by reference as if fully set forth herein.

106.    Since June 27, 2022, OGC informed Griesing that OGC was still gathering responsive information, but that OGC determined that Griesing Law had received only about 4% of the at least $138,000 in fees Kleinbard had received for the OGC Kleinbard Project and that Kleinbard owed Griesing Law 20% of at least an additional $85,000 paid to Kleinbard.

107.    By letter dated August 2, 2022, Commonwealth General Counsel wrote to Kleinbard Attorney Burrell and copied Kleinbard Attorney Hyman, confirming that Kleinbard received $138,000 for legal services on the OGC Kleinbard Project and requesting that Kleinbard confirm to OGC by August 5, 2022, the amount of fees paid to Griesing as the SDB subcontractor on that matter.  A true and correct copy of the August 2, 2022 letter is attached hereto as Exhibit "M" and incorporated by reference as if fully set forth herein.

108.    As of the date of the filing of this Complaint, and to Griesing Law's information and knowledge, Kleinbard had not responded to the OGC's August 2, 2022 letter.

109.    In an effort to resolve these disputes without the need for litigation, Griesing Law, through the OGC office, sent a tolling agreement to Kleinbard on or about August 10, 2022 seeking execution of the agreement while the parties worked out these issues.  Kleinbard never responded to the email from OGC.

110.    Kleinbard's persistent refusal to respond to Griesing Law, BDISBO or OGC reflects their intentional disregard for and defiance of their contractual obligations to the OGC, to which Griesing Law is an intended third party beneficiary, and to Griesing Law as their SDB subcontractor.

111.    This is consistent with the hubris of Kleinbard and its attorneys in repeatedly reminding Griesing Law that Burrell and Kleinbard have "special" and "close" relationships with the Governor and other high level elected and administration officials in Harrisburg and across the Commonwealth. Kleinbard's intentional misrepresentations to Griesing Law and its blatant disregard of communications from BDISBO and OGC is consistent with the message they conveyed to Griesing Law by their words and conduct: Kleinbard is so politically connected in Pennsylvania that they do not have to follow the rules or honor their contracts and no consequences will flow if they continue to breach their obligations.

112.    This action is brought to recover for the intentional harm Kleinbard inflicted on Griesing Law and to assure that Kleinbard faces serious consequences for its actions and that other prime contractors in the Commonwealth are deterred from cheating SDB subcontractors as Kleinbard has done to Griesing Law.

**Harm to Griesing Law**

113.    The Commonwealth PRiSM system is intended to track payments to prime contractors and to subcontractors under Commonwealth RFPs and contracts including those issued by OCG.

114.    Unfortunately, the PRiSM system is not complete, accurate or current, and the OGC must consult multiple sources within the Commonwealth to confirm the total paid to any prime contractor on an OGC contract.

115.    The Commonwealth does not pay subcontractors directly, the Commonwealth pays the prime contractor which is charged with submitting bills on its own behalf and on behalf of any subcontractors.

116.    Once the prime is paid by the Commonwealth, it is required to pay any subcontractor.

117.     The Commonwealth is also supposed to be able to rely on the quarterly PRiSM submissions by primes tracking payments to subcontractors, but primes such as Kleinbard do not always comply with the reporting requirements.

118.     The Commonwealth has informed Griesing Law that it is endeavoring to determine the total amount paid to Kleinbard on OGC contracts for which Griesing Law is the designated subcontractor, but as of commencement of this action, that process is not complete.

119.     Upon information and belief, Kleinbard has received fees from the Commonwealth substantially in excess of the amounts the OGC has tracked so far and Griesing Law is entitled to at least 20% of the total fees paid to Kleinbard.

120.     In addition, as a direct result of Kleinbard withholding work from Griesing Law, the Firm has been deprived of significant opportunities to develop and enhance its experience in representing the Commonwealth and in the underlying subject matter that was involved in the OGC Kleinbard Project and in any other work that Kleinbard withheld from Griesing Law.

121.     The damages flowing from this lost opportunity to develop and enhance its experience has caused Griesing Law to suffer substantial consequential damages far in excess of the amount of fees that Kleinbard intentionally withheld from Griesing Law.

122.     For example, many of the OGC RFPs call for experience working with the specific Commonwealth agency issuing the RFP in addition to substantive experience in a particular area of law or in a particular forum.  By depriving Griesing Law of its fair share of the work under awarded contracts for which Griesing Law was or is the designated SDB subcontractor, Kleinbard put Griesing Law at a disadvantage in the OGC RFP process as Griesing Law refrained from submitting as a prime on certain OGC RFPs because the Firm did not specifically have fulsome

experience handling certain types of matters for the Commonwealth.

123.    Further, even if a firm is selected as a prime under an OGC RFP, there is no guarantee that the firm will actually be assigned work thereunder.  The OGC has discretion in determining whether to assign work to a particular prime law firm especially when more than one firm if selected under an RFP.

124.    By denying Griesing Law of the contractually mandated participation in Commonwealth work, Kleinbard deprived the Firm of showcasing its abilities to the OGC and negatively impacted the likelihood that Griesing Law would be assigned work as a prime law firm compared to other prime firms that had been selected pursuant to an OGC RFP.

125.    In addition, by depriving Griesing Law of the contractually mandated participation in Commonwealth work, Kleinbard deprived the Firm of developing or enhancing the Firm's experience, which the Firm could have used to attract other clients resulting in additional substantial loss to Griesing Law.

## COUNT I
### Breach of Contract—Letters of Intent between Griesing Law and Kleinbard

126.    Paragraphs 1 through 125 are incorporated herein by reference.

127.    The Letters of Intent between Griesing Law and Kleinbard constitute valid and binding contracts between the parties.

128.    Through Kleinbard's acts and omissions, as described above, Kleinbard materially breached the contracts.

129.    Specifically, Kleinbard failed to provide Griesing Law the opportunity to perform legal services for at least the contractually agreed 20% of the work performed under OGC contracts and failed to pay Griesing Law at least the contractually agreed 20% of the fees.  Kleinbard was

not excused from these obligations by DGS, BDISBO, OGC or any other authorized agent of the Commonwealth.

130.    At all relevant times, Griesing Law was ready, willing and able to perform under the Letters of Intent and the OGC Contracts.

131.    Kleinbard's breaches of contract under the Letters of Intent caused damage to Plaintiffs.

132.    The precise extent of Griesing Law's damages is unknown to Griesing Law because it does not know the extent of the contracts awarded to Kleinbard based on Griesing Law's support, how much Kleinbard has been paid by the Commonwealth of Pennsylvania pursuant to contracts for which Griesing Law was the subcontractor and therefore entitled to 20% of the fees.

**WHEREFORE,** Griesing Law demands judgment in its favor and against Kleinbard for all compensatory, consequential and incidental damages in an amount in excess of $75,000, interest, punitive damages, attorneys' fees, a legal accounting, and/or such other relief as the Court may deem just and proper.

## COUNT II

### Breach of Contract—Griesing Law as Third-Party Beneficiary to OGC Contracts and March 1 Engagement Letter Between the Commonwealth of Pennsylvania and Kleinbard

133.    Paragraphs 1 through 132 are incorporated herein by reference.

134.    The contracts between OGC and Kleinbard referenced in the Complaint and the March 1 Engagement Letter constitute valid and binding contracts between the Commonwealth OGC and Kleinbard.

135.    Griesing Law was an intended third party beneficiary of the OGC Contracts and the March 1 Engagement Letter.

136.     Through Kleinbard's acts and omissions, as described above, Kleinbard materially breached the contracts.

137.     Specifically, Kleinbard failed to provide Griesing Law the opportunity to perform legal services for at least the contractually agreed 20% of the work performed under OGC contracts and failed to pay Griesing Law at least the contractually agreed 20% of the fees. Kleinbard was not excused from these obligations by DGS, BDISBO, OGC or any other authorized agent of the Commonwealth.

138.     At all relevant times, Griesing Law was ready, willing and able to perform under the Letters of Intent and the OGC Contracts.

139.     Kleinbard's breaches of contract under the Letters of Intent and related OGC Contracts and March 1 Engagement Letter caused damage to Griesing Law as the intended third-party beneficiary.

140.     The precise extent of Griesing Law's damages is unknown to Griesing Law because it does not know the extent of the contracts awarded to Kleinbard based on Griesing Law's support, how much Kleinbard has been paid by the Commonwealth of Pennsylvania pursuant to contracts for which Griesing Law was the subcontractor and therefore entitled to 20% of the fees..

**WHEREFORE,** Griesing Law demands judgment in its favor and against Kleinbard for all compensatory, consequential and incidental damages in an amount in excess of $75,000, interest, punitive damages, attorneys' fees, a legal accounting, and/or such other relief as the Court may deem just and proper.

## COUNT III
### Unjust Enrichment (Quantum Meruit)—Kleinbard's Inducement of
### Griesing Law to Offer its Services as a Subcontractor

141.    Paragraphs 1 through 140 are incorporated herein by reference.

142.    Kleinbard repeatedly requested that Griesing Law provide its services as a subcontractor in connection to the contracts between the OGC and Kleinbard.  Griesing Law conferred a benefit on Kleinbard by agreeing to provide its services as a subcontractor because, without a SDB subcontractor, Kleinbard would not have received the OGC contracts.

143.    Griesing Law is entitled to the reasonable value of its services provided to Kleinbard or which Griesing Law was ready, willing and able to provide and were denied the opportunity to provide due to Kleinbard's wrongdoing.

144.    Kleinbard has failed to pay Griesing Law in connection with its agreement to serve as the SDB subcontractor on Kleinbard's contracts with the OGC.  It would be inequitable and unjust to allow Kleinbard to retain the monetary benefits of the OGC contracts awarded without paying Griesing Law it 20% share of the fees.

**WHEREFORE**, Griesing Law demands judgment in its favor and against Kleinbard for all compensatory, consequential and incidental damages in an amount in excess of $75,000, interest, punitive damages, attorneys' fees, a legal accounting, and/or such other relief as the Court may deem just and proper.

## COUNT IV
### Tortious Interference with Contractual Relations and
### Prospective Contractual Relations

145.    Paragraphs 1 through 144 are incorporated herein by reference.

146.    Kleinbard's actions in concealing from Griesing Law the award of work by the OGC pursuant to RFPs in which Griesing Law was the designated SDB subcontractor and

depriving Griesing Law of that opportunity, prevented Griesing Law from enhancing its reputation with the Commonwealth and particularly with OGC.

147.    Further, Kleinbard's misrepresentation to Burwell at BDISBO that Griesing Law was not ready, willing or able to perform under the subcontract reflected on Griesing Law's reputation with decision makers at the Commonwealth charged with overseeing the procurement process and compliance with the SDB requirements.

148.    Kleinbard's actions negatively impacted the likelihood that Griesing Law would be selected as a prime contractor pursuant to RFPs and whether, even if selected as a prime, Griesing Law would actually be awarded any contracts and assigned any work.

149.    Despite Griesing Law's qualifications, the OGC has declined to select Griesing Law has a prime contractor in connection the OGC's RFP process as a proximate result of Kleinbard's misstatements to the OGC regarding Griesing Law's ability and willingness to perform as an SDB subcontractor.

150.    At all relevant times, Kleinbard and its agents acted outrageously, willfully, wantonly, and/or recklessly in connection to its misrepresentations regarding Griesing Law's willingness and ability to provide legal services to the OGC.  Kleinbard's actions were done with bad motive or a reckless indifference to Griesing Law's interest in having a strong reputation with the OGC.

**WHEREFORE,** Griesing Law demands judgment in its favor and against Kleinbard for all compensatory, consequential and incidental damages in an amount in excess of $75,000, interest, punitive damages, attorneys' fees, and/or such other relief as the Court may deem just and proper.

## COUNT V
### Fraudulent Misrepresentation and/or Concealment

151.    Paragraphs 1 through 150 are incorporated herein by reference.

152.    Kleinbard made misrepresentations to, and/or concealed facts from Griesing Law that were material to Griesing Law's entry into the Letters of Intent and were material to the OGC's decision to appoint Kleinbard to perform legal services for the Commonwealth.  Kleinbard's misrepresentations and/ or material omissions include the conduct outlined in Paragraphs 25, 56, 67, 81, 91, 96, 99, and 111 which Griesing Law incorporates herein by reference.

153.    Specifically, in April of 2019, Kleinbard Attorney Burrell represented to Griesing Law that Kleinbard would assign Griesing Law 20% of the OCG Kleinbard Project work, when Kleinbard never intended to do so and, in fact, Kleinbard intended to conceal from Griesing Law the fact that it had been awarded additional work and additional contracts based upon Griesing Law's support in the RFP process.

154.    Burrell and other Kleinbard attorneys made similar misrepresentations to Griesing Law throughout 2019, 2020 and into 2022.  Further, throughout that time, they continued to conceal from Griesing Law that they had obtained additional work and additional contracts from OCG based upon Griesing Law's support in the RFP process.

155.    Kleinbard's misrepresentations were made expressly to induce Griesing Law's "continued participation as co-counsel."  However, Kleinbard never intended to honor its commitment to Griesing Law.

156.    These misrepresentations and/ or omissions were false, material, and made by Kleinbard with knowledge of their falsity or recklessness as to whether they were true or false.

157.    Kleinbard made these misrepresentations and/ or omissions with the intent of Griesing Law relying on them, and Griesing Law did in fact justifiably rely on them.  If Griesing

Law had known that Kleinbard was receiving work from OGC and not sharing it, was receiving payments from OGC and not paying it, and was receiving additional contracts from OGC and not notifying Griesing Law, Griesing Law would not have continued to participate with Kleinbard on additional RFPs, among other things detrimental to Griesing Law.

158.    These fraudulent misrepresentations and/ or omissions were the proximate causation of the damages suffered by Plaintiffs.

159.    At all relevant times, Kleinbard and its agents acted outrageously, willfully, wantonly, and/or recklessly in connection to its misrepresentations regarding its intent to assign Griesing Law work as the SDB subcontractor on the OGC contracts.  Kleinbard's actions were done with bad motive or a reckless indifference to Griesing Law's interest in having a strong reputation with the OGC.

WHEREFORE, Griesing Law demands judgment in its favor and against Kleinbard for all compensatory, consequential and incidental damages in an amount in excess of $75,000, interest, punitive damages, attorneys' fees, and/or such other relief as the Court may deem just and proper.

## COUNT IV
### Negligent Misrepresentation and/or Concealment

160.    Paragraphs 1 through 159 are incorporated herein by reference.

161.    As detailed above, Kleinbard made misrepresentations to and/or concealed facts from Griesing Law that were material to Griesing Law's entry into the Letters of Intent where Kleinbard should have known of the falsity.  Kleinbard's misrepresentations and/or material omissions include, but are not limited to, the conduct outlined in Paragraphs 25, 56, 67, 81, 96, 91, 99, and 111, which Griesing Law incorporate herein by reference.

162.     Kleinbard made these misrepresentations and/or omissions with the intent to induce Griesing Law to act upon them, which resulted in injury to Griesing Law acting in justifiable reliance on the misrepresentations and/or omissions.

**WHEREFORE,** Griesing Law demands judgment in its favor and against Kleinbard for all compensatory, consequential and incidental damages in an amount in excess of $75,000, interest, punitive damages, attorneys' fees, and/or such other relief as the Court may deem just and proper.

Dated:  August 18, 2022                              Respectfully submitted,

                                                     GRIESING LAW, LLC


                                                     */s/ Julie Negovan, Esq.*
                                                     Julie Negovan, Esq.
                                                     Melissa Hazell Davis, Esq.
                                                     R. Keith Petersen, Esq.
                                                     Identification Nos. 81231; 318298; and 328934
                                                     1880 John F. Kennedy Blvd., Suite 1800
                                                     Philadelphia, PA 19103
                                                     (215) 618-3720
                                                     (215) 814-9049 [fax]
                                                     jnegovan@griesinglaw.com
                                                     mdavis@griesinglaw.com
                                                     kpetersen@griesinglaw.com
                                                     *Attorneys for Plaintiff*