IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRIESING LAW, LLC, <br><br> Plaintiff, <br><br> v. <br><br> KLEINBARD LLC, <br><br> Defendant | CIVIL ACTION NO. 2:22-cv-03302 |

**DEFENDANT KLEINBARD LLC'S BRIEF IN OPPOSITION TO PLAINTIFF GRIESING LAW, LLC'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT**

Defendant Kleinbard LLC ("Kleinbard" or "Defendant"), by and through its undersigned counsel Holland & Knight LLP, hereby submits this Brief in Opposition to Griesing Law, LLC's ("Griesing" or "Plaintiff") Motion for Leave to File Supplemental Complaint (the "Motion") [Doc. No. 7] pursuant to this Court's August 30, 2022 Order.

## I.  INTRODUCTION

Plaintiff's Motion should be denied on futility grounds because the putative claim of defamation it seeks to assert against Kleinbard is implausible. The sole basis of Plaintiff's defamation claim is an article written in *The Legal Intelligencer,* on Aug. 19, 2022, in which Kleinbard Managing Partner, Matthew H. Haverstick, emphatically denied Plaintiff's false accusations of discrimination as follows:

"Anyone who knows Kleinbard, and in particular the lawyers working on cases in the lawsuit, knows that the allegations are outrageous and wrong and we will put the lie to them when we respond to the complaint." As a matter of law, this quote cannot give rise to a claim of defamation for three independent reasons.

First, the quoted statement is, at best, nothing more than an expression of opinion and/or statement of future intent that is legally incapable of defamatory meaning. The dictionary definition of the idiom "put the lie" means "to refute or counter something."[1] This phrase is facially incapable of defamatory meaning. Judge Restrepo rejected a near-identical claim of defamation based on a defendant-lawyer's statement to the Legal Intelligencer referring to plaintiff's accusations in a pending lawsuit as "completely baseless." *Downs v. Schwartz*, No. 14-630, 2015 WL 4770711, at *16 (E.D. Pa. Aug. 12, 2015). The Court should reach the same conclusion here.

Second, to prevail on a libel claim in Pennsylvania, a plaintiff must demonstrate actual harm. The proposed amended complaint fails to plead any facts making Plaintiff's boilerplate accusations of harm plausible.

Third, Mr. Haverstick's statement was made in response to pending litigation, and thus should be protected by Pennsylvania's judicial privilege, consistent with

---

[1] *See* American Heritage® Dictionary of the English Language, Fifth Edition. (2011). Retrieved September 2 2022 from https://idioms.thefreedictionary.com/put+the+lie+to.

the public policy behind that privilege. Plaintiff's initial pleading attempts to paint a wildly inaccurate, public portrait of Defendant's diverse and highly-respected leadership team as (falsely) harboring animus against women and minority businesses. Nothing could be further from the truth. Mr. Haverstick's sharp public rebuke of false assertions to the legal community should come as no surprise, and his public announcement to defend against Plaintiff's provocative accusations was measured, appropriate and warranted.

Against this backdrop, it is apparent that Plaintiff's Motion is not designed to assert a valid legal theory against Kleinbard, but instead made to draw further attention to Plaintiff's allegations, and in the process further assail Kleinbard and its leadership. The Court should reject this transparent strategy and deny Plaintiff's Motion.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff commenced this action against Kleinbard on August 18, 2022 by filing a four-count Complaint asserting claims for breach of contract, unjust enrichment, tortious interference, and negligent misrepresentation (ECF No. 1) (the "Complaint").

On August 19, 2022, The Legal Intelligencer published an article regarding Plaintiff's Complaint written by Justin Henry, *Kleinbard Used Women-Owned Firm's Diversity Status to Get Six-Figure Pa. Contracts, Suit Claims,* (the "Article")

in which Kleinbard Managing Partner, Matthew H. Haverstick, is quoted as follows: "Anyone who knows Kleinbard, and in particular the lawyers working on cases in the lawsuit, knows that the allegations are outrageous and wrong and we will put the lie to them when we respond to the complaint." (Pl.'s Mot. at pp. 1-2).

By the very next business day, August 22, 2022, Plaintiff demanded a retraction of the quoted statement and threatened to file a supplemental complaint to include a defamation count against Defendant and Mr. Haverstick, individually. On August 26, 2022, undersigned counsel for Defendant brought to Plaintiff's attention the *Downs* case and asked Plaintiff to refrain from proceeding with its implausible defamation claim. Counsel encouraged Plaintiff to instead focus its efforts on an early resolution, and offered a meeting with representatives of Defendant to discuss same. Plaintiff refused to refrain from filing its motion, and has not followed up on the offer to discuss early resolution. On August 26, 2022, Plaintiff filed the Motion for Leave to File Supplemental Complaint seeking to advance a putative defamation claim based upon the above quote from the Legal Intelligencer Article. The Court ordered Defendant to file its response to the Motion by September 6, 2022. As further explained below, the Motion should be denied because the proposed amendment in the "Supplemental Complaint" to include a defamation count is futile.

## III. **LEGAL STANDARD**

The District Court may permit a party to file a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *See* Fed. R. Civ. P. 15(d). The decision of whether to permit a supplemental pleading is within the District Court's discretion. *See Owens–Illinois, Inc. v. Lake Shore Land Co.,* 610 F.2d 1185, 1188-89 (3d Cir. 1979); *see also Burns v. Exxon Corp.,* 158 F.3d 336, 344 (5th Cir. 1998) (holding that district court did not abuse its discretion in denying leave to file supplemental complaint). Although leave to file a supplemental complaint is generally freely permitted, "bad faith, dilatory tactics, undue prejudice to defendants, or futility," are all grounds for denying *CMR D.N. Corp. v. City of Philadelphia*, 2011 WL 857294, at *3 (E.D. Pa. Mar. 11, 2011) (citing *Tormasi, v. Hayman*, 2010 WL 1878961, at *2 (D.N.J. May 10, 2010)).

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Brown & Brown, Inc. v. Cola*, No. 10–3898, 2011 WL 2745808, at *4 (E.D. Pa. July 13, 2011) (quoting *Holst v. Oxman*, 90 F. App'x. 508, 510 (3d Cir. 2008)). The Court "may thus deny leave to amend where the amendment would not withstand a motion to dismiss" under the pleading standards announced by the Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See Brown*,

2011 WL 2745808, at *4-10 (denying motion for leave to amend where proposed amendment failed to state a plausible claim for breach of contract).

## IV. ARGUMENT

### A. The Proposed Supplemental Complaint Fails To State A Plausible Defamation Claim Because The Quoted Statement Is Incapable of Defamatory Meaning

To state a claim for defamation under Pennsylvania law, a plaintiff must establish: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. § 8343.

Procedurally, district courts should decide at the outset whether a statement is capable of defamatory meaning. *Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014) (citing *Thomas Merton Ctr. v. Rockwell Int'l Corp.,* 497 Pa. 460, 442 A.2d 213, 215–16 (1981)). A statement is defamatory if "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* at 282 (quoting *Birl v. Phila. Elec. Co.,* 402 Pa. 297, 167 A.2d 472, 476 (1960) (internal quotation marks omitted)). But the statement must do more than merely embarrass or annoy the

6

plaintiff; it must provoke " 'the kind of harm which has grievously fractured [one's] standing in the community of respectable society.'" *Tucker v. Phila. Daily News,* 577 Pa. 598, 848 A.2d 113, 124 (2004) (quoting *Scott–Taylor, Inc. v. Stokes,* 425 Pa. 426, 229 A.2d 733, 734 (1967)).

Here, Plaintiff cannot satisfy the first element required to advance a defamation under Pennsylvania law. Plaintiff's putative defamation claim based on the quoted statement of Mr. Haverstick in the Article is an opinion not capable of defamatory meaning. Courts have so held when confronted with similar statements to the press made by defendants. *E.g.*, *Hill v. Cosby*, 665 Fed. Appx. 169, 173 (3d Cir. 2016) (statement of defendant's wife in the press questioning the plaintiff's honesty in accusations against the defendant was not capable of defamatory meaning); *Riley v. Harr*, 292 F.3d 282, 292 (1st Cir. 2002) (statement that the plaintiff "had lied" was not actionable as defamation); *Gotbetter v. Dow Jones & Co.*, 687 N.Y.S.2d 43, 44 N.Y. App. Div. 1999) (calling plaintiff's allegations "baseless" was "not actionable [as defamation] because the cited statement [was] merely an opinion").

Judge Restrepo's opinion in *Downs v. Schwartz* is particularly instructive on this point. 2015 WL 4770711. There, the Court entered summary judgment on a similar defamation claim where a defendant law firm publically responded to plaintiff's accusations in a lawsuit by calling them "completely baseless" in a letter

7

to the editor to The Legal Intelligencer. *Id.* at \*15. In *Downs*, this Court held that the use of the term "baseless" by the Defendants did not transform an otherwise accurate summary into a statement with defamatory meaning. *Id*. at \*16. *See also Remick v. Manfredy,* 238 F.3d 248, 262 (3d Cir. 2001) ("the use of catchy phrases or hyperbole does not necessarily render statements defamatory that would otherwise be non-actionable."); *Redco Corp. v. CBS, Inc.,* 758 F.2d 970, 972 (3d Cir. 1985) (statements can be protected "because they merely involve the use of colorful language and are not defamatory").

Moreover, in *Downs,* this Court reasoned that, because the readers of The Legal Intelligencer are other lawyers in the profession shared by the plaintiff, the audience to which the letter to the editor was published was knowledgeable enough to know that parties locked in heated litigation often vigorously defend themselves when their case becomes the subject of press coverage. *Id*. at \*16. *See also Remick,* 238 F.3d at 262–63 (holding that strong words, such as "extort," in a publication "written in the context of two lawyers taking diametrically opposing legal positions" are not defamatory, particularly where "the audience to which [the] statement was allegedly published knew that it arose from bitter attorney communications"). Judge Restrepo held in *Downs* that, as a matter of law, defendant's words were legally deemed to not be capable of a defamatory meaning; the defendant was simply representing itself in the press. *Id.*

8

Here, Mr. Haverstick's statement that is the subject of Plaintiff's putative defamation claim is analytically indistinguishable from the "completely baseless" statement found to be incapable of defamatory meaning in *Downs*. Mr. Haverstick's statements were inactionable opinions regarding the professionalism and reputation of his firm, along with a pronouncement of his future intention to vigorously defend against the asserted claims. Plaintiff's suggestion that Mr. Haverstick was imputing "legal, ethical, and business misconduct onto Griesing Law" (Pl.'s Proposed Am. Complaint at ¶ 135) is an inaccurate and exaggerated mischaracterization of the quote in question, which, as noted, is an idiom announcing future intention "to refute or counter something." Mr. Haverstick and Kleinbard cannot be subject to a defamation claim based on the dictionary definition of the words in the question—amounting to little more than a truthful announcement of future plans to defend against pending litigation.

Contextually, these statements were, as in *Downs*, made to *The Legal Intelligencer*, an audience that this Court found to be knowledgeable enough to recognize the non-defamatory nature of the statement. The opinion in *Downs* is consistent with the Third Circuit's own pronouncements that strong words "written in the context of two lawyers taking diametrically opposing legal positions" are not defamatory, particularly where "the audience to which [the] statement was allegedly published knew that it arose from bitter attorney communications." *Remick,* 238

9

F.3d at 262-63. Under these cases, Plaintiff cannot plausibly allege the first element required to advance a defamation claim under Pennsylvania law by establishing the defamatory character of the communication. Plaintiff's putative defamation claim is thus futile, and Plaintiff's Motion should be denied.

> **B.** **The Proposed Defamation Claim Is Implausible Because Plaintiff Pleads No Facts Demonstrating Special Harm**

Plaintiff's putative defamation claim is also futile for an independent reason: the supplemental complaint does not plead or assert any facts supporting the essential element of actual harm. To "prevail on a libel claim in Pennsylvania, a plaintiff need not show economic harm, but he must demonstrate actual harm." *Durando v. Trustees of U. of Pennsylvania*, No. 21-756, 2022 WL 2192943, at *6 (E.D. Pa. June 17, 2022) (citing *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 429 & n. 10 (Pa. 2015)). "Specifically, the Pennsylvania Supreme Court held in a libel case that 'proof of actual injury to a private plaintiff's reputation is a prerequisite to the recovery of damages for other actual injuries, including mental and emotional injuries.'" *Id.* (quoting *Joseph*, 129 A.3d at 429).

Here, Plaintiff pleads no plausible facts demonstrating actual reputational injury. Instead, Plaintiff rests their claim on a theory of hypothetical and speculative probabilities: that someone might, one day, Google "Griesing Law" and read The Legal Intelligencer article containing Mr. Haverstick's quote, and such review might cast doubt on the Plaintiff's claims. This far-fetched theory falls well short of the

threshold for reputational harm established by the Pennsylvania Supreme Court in *Joseph*. Plaintiff should point to facts showing actual reputational injury. *See Durando*, *supra*. Without it, Plaintiff's speculative belief of potential harm is irrelevant, "because such injuries cannot alone establish the special harm element of a defamation claim in Pennsylvania." *Id.* For this additional reason, the Court should deny Plaintiff's Motion.

### C. The Proposed Defamation Claim Is Implausible Because The Statement In Question Is Privileged

The Court should also deny Plaintiff's Motion as futile because the allegedly defamatory statement is privileged. The "publisher of [allegedly] defamatory material is not liable if the publication was made subject to a privilege and the privilege was not abused." *Bennett v. Itochu Int'l, Inc.*, 682 F. Supp. 2d 469, 476 (E.D. Pa. 2010). "Whether a privilege exists [or] applies in a given context is a question of law for the court." *Doe v. Wyo. Valley Health Care Sys., Inc.*, 987 A.2d 758, 767 (Pa. Super. Ct. 2009).

One such privilege is the "judicial privilege." *See Bochetto v. Gibson*, 860 A.2d 67, 71 (Pa. 2004). The judicial privilege entitles a person "to absolute immunity for 'communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought.'" *Id.* (emphases removed) (quoting *Post v. Mendel*, 510 Pa. 213, 507 A.2d 351, 355 (1986)). "[T]he judicial privilege is not limited to statements made in open court."

11

*Schanne v. Addis*, 121 A.3d 942, 947 (Pa. 2015). It also covers "less formal communications such as preliminary conferences and correspondence between counsel in furtherance of the client's interest." *Id.* (quoting *Pawlowski v. Smorto*, 403 Pa. Super. 71, 588 A.2d 36, 41 (1991)). "The contours of the privilege ... have been shaped by a case-by-case evaluation of whether its application in specific circumstances is needed to advance its underlying policy objectives." *Id.* at 948.

The judicial privilege's policy objectives include the "fundamental societal need for justice to be administered freely and efficiently through the eliciting of speech from parties and witnesses that may be accusatory or otherwise reflect negatively upon another's character." *Id.* at 947. The privilege encourages "[a]ll persons involved in a judicial proceeding ... to speak frankly and argue freely without danger or concern that they may be required to defend their statements in a later defamation action." *Smith v. Griffiths*, 327 Pa.Super. 418, 476 A.2d 22, 24 (1984). It "is an integral part of a public policy which permits all suitors, however bold and wicked, however virtuous and timid, to secure access to the courts of justice to present whatever claims, true or false, real or fictitious, they seek to adjudicate." *Post*, 507 A.2d at 355.

Extra-judicial statements, such as published accounts or statements made at press conferences regarding judicial proceedings, are not subject to the internal control of the courts and are not absolutely privileged. Rather, these types of

activities are entitled to a qualified privilege. In Pennsylvania, the qualified privilege is available to attorneys, witnesses, lay people, and the press. *Heyward v. Stouffer*, No. 91-1452, 1991 WL 275604, at *2, 1991 U.S. Dist. LEXIS 18692, at *5-6 (E.D.Pa. Dec. 23, 1991) ("It is well to remember that First Amendment freedoms attach not only to the press, but also to mere lay people as well. The qualified privilege against defamation suits is available to anyone who fairly reports on judicial proceedings, including the attorneys and the parties to that proceeding.").

In *Downs*, Judge Restrepo held that the law firm-defendants pronouncements in the Legal Intelligencer encouraging readers to "continue to follow the story" and monitor the on-going litigation remained subject to qualified judicial privilege. Judge Restrepo rejected the plaintiff's argument that the privilege was lost when these statements were made to the press and encouraged readers to review the defendant's underlying pleadings in the litigation, which, *inter alia*, referred to the plaintiff's allegations as a "shake down." 2015 WL 4770711, at *6, 14-15.

As in *Downs*, Mr. Haverstick's statements of opinion underscoring Defendant's intention to defend against the allegations in question should remain privileged, and were clearly made in the context of pending litigation. Permitting and protecting Mr. Haverstick's speech is consistent with Pennsylvania public policy protecting an attorney's communication that bears some relationship to the on-going proceeding. *See Post*, 507 A.2d at 356. Furthermore, as a matter of sound public

13

policy, Plaintiff should not be permitted to use judicial privilege as both a sword and shield—insulating its own highly inflammatory accusations of discrimination against Kleinbard and its leadership team—while conversely seeking civil liability and damages for Defendant's mere indication of future intention to disprove and defend against same. As in *Downs*, Mr. Haverstick did nothing other than defend his firm in the legal media.

## V. CONCLUSION

For all of the foregoing reasons, Defendant Kleinbard LLC respectfully submits that this Court should deny Griesing Law, LLC's Motion for Leave to File a Supplemental Complaint.

Respectfully submitted,

s/ Carolyn P. Short
Carolyn P. Short
Carolyn.Short@hklaw.com
James D. Schultz
James.Schultz@hklaw.com
Nipun J. Patel
Nipun.Patel@hklaw.com
**HOLLAND & KNIGHT LLP**
Cira Centre
2929 Arch Street, Suite 800
Philadelphia, PA 19104
(215) 252-9600

Dated: September 6, 2022