IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRIESING LAW, LLC | : | |
| v. | : | CIVIL ACTION NO. 2:22-cv-03302-PD |
| KLEINBARD LLC | : | |

# REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION <u>FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT</u>

Plaintiff, Griesing Law, LLC ("Griesing" or "Plaintiff"), by and through its undersigned counsel, hereby files this Reply to Defendant, Kleinbard LLC's ("Kleinbard") Response in Opposition to Griesing's Motion for Leave to File a Supplemental Complaint ("Opposition") and states as follows:

## I. **INTRODUCTION**

Kleinbard's Opposition to Griesing's Motion for Leave to File a Supplemental Complaint (the "Motion") attempts to portray Kleinbard as a professional, well-mannered, innocent victim. In so doing, Kleinbard selectively positions its correspondence with Griesing and ignores the context of this suit. Specifically, Kleinbard's Opposition paints a narrative of Kleinbard and its counsel seeking to resolve the issues in the complaint, while Griesing hysterically responds with a baseless defamation claim. *See* ECF No. 12 at 1-3.

In reality, Griesing tried numerous times—borrowing Kleinbard's phrase—to "focus its efforts on an early resolution" by imploring Kleinbard to privately resolve this dispute before <u>the original complaint was filed.</u> *See e.g.,* ECF No. 1 at ¶¶ 81-82. Kleinbard ignored all efforts by Griesing *and the Commonwealth of Pennsylvania* to discuss the issues outlined in the Complaint. *See id.* Even after the filing of the Complaint, and after Kleinbard's Matthew Haverstick gave a quote to *The Legal Intelligencer* where he stated Griesing's claims were outrageous and Kleinbard would "put the lie to" Griesing, Griesing again "focus[ed] its efforts on an early resolution" and requested Mr. Haverstick retract his statement. *See* Correspondence from Julie Negovan to Matthew Haverstick dated Aug. 22 attached hereto as Exhibit A. Kleinbard's response, through counsel, threatened Rule 11 sanctions if Griesing filed a Supplemental Complaint and stated "we encourage you, as we have been, to engage in further dialogue to address a potential early and amicable resolution of this matter." *See* Correspondence from Nipun Patel to Julie Negovan dated Aug. 26 attached hereto as Exhibit B. Kleinbard's counsel responded to that correspondence with an email admitting that Kleinbard had not paid Griesing in connection with the Commonwealth contracts (thus underscoring the carelessness and inaccuracy of Mr. Haverstick's defamatory statement):

> Kleinbard LLC has undertaken an analysis of the fees received in connection with its work on OGC matters. That analysis shows fees received from OGC in connection with two matters: 1) approximately $130,000

> in fees from the PEMA matter; and 2) approximately $14,000 in fees from the Cheyney matter. In connection with the Cheyney matter, Kleinbard is still trying to determine if Griesing Law, LLC was, in fact, identified as a minority subcontractor. Nevertheless, in connection with a full and final settlement of the litigation and a release of all claims, Kleinbard is willing to offer Plaintiff 20% of the fees it received from OGC on both matters. This offer of settlement is contingent upon Plaintiff refraining from amending the complaint or engaging in any further motion practice.

*See* Email from Nipun Patel to Julie Negovan dated Aug. 26 attached hereto as Exhibit C.[1] Counsel for Griesing responded to Mr. Patel's correspondence pointing out the hypocrisy of Kleinbard stating it has been working to an early resolution when it ignored Griesing and the Commonwealth for months leading up the suit and further challenging in Kleinbard's position that it should be allowed to levy baseless attacks at Griesing's credibility in the press but Griesing should be sanctioned if it dares to respond with a well-grounded defamation claim. *See* Correspondence from Julie Negovan to Nipun Patel dated Aug. 26 attached hereto as Exhibit D.

---

[1] Mr. Patel labeled his email "INADMISSIBLE SETTLEMENT COMMUNICATION – CONFIDENTIAL SUBJECT TO PA. R.E. 408 & F.R.E. 408." Griesing is not offering this email as evidence. Still, as a matter of professional courtesy, Griesing would ordinarily refrain from attaching this correspondence to a filing outside the purview of Rule 408. However, because Kleinbard has selectively summarized the parties' various discussions concerning early resolution and supplementation of the complaint unfairly, Griesing must present the complete picture of those communications, especially given Kleinbard's portrayal of Griesing as unprofessional and unreasonable and its accusation that including the defamation claim is sanctionable.

In short, while Kleinbard attempts to polish its actions and Mr. Haverstick's statements, the reality is Kleinbard discriminated against Griesing in contravention of its obligations under Commonwealth contracts, used Griesing to get more Commonwealth work, refused to pay Griesing according to the Commonwealth requirements, ignored all pre-suit attempts at resolution and then defamed Griesing when Griesing sued to protect its rights. Griesing is entitled to pursue recovery for these wrongs in this Court.

II. **LEGAL ARGUMENT**

In addition to the contextual liberties Kleinbard has taken its response, Kleinbard's legal arguments largely misapply and misstate the relevant law. Kleinbard raises three arguments in support of its position that Griesing's Supplemental Complaint will be futile: (1) Mr. Haverstick's statement is "incapable of defamatory meaning"; (2) Plaintiff does not plead "special harm"; and (3) Mr. Haverstick's statement is privileged. These arguments fail as a matter of law.

    A.    **Haverstick's statement that Kleinbard would "put the lie to" Griesing Law is capable of defamatory meaning.**

Kleinbard's position regarding the innocent nature of Mr. Haverstick's statement largely relies on Judge Restrepo's unreported summary judgment opinion in *Downs v. Schwartz*, Civ. A. No. 14-630, 2015 WL 4770711 (E.D. Pa. Aug. 12, 2015). However, *Downs* has a highly distinguishable procedural posture and the factual circumstances of *Downs* are wildly different from Mr. Haverstick's directly

4

derogatory statement. In *Downs*, a law firm accused of employment discrimination drafted a letter to the editor of *The Legal Intelligencer* stating the plaintiff's claims were "completely baseless." The court further explained the letter to the editor: "[the plaintiff] 'asked that his claim before the Philadelphia Commission on Human Relations be dismissed before the commission issued a decision,' and 'encourage[d] The Legal and its readers to continue to follow this story closely. Read about the issues that come up in discovery. Study any decisions that come down. We have nothing to hide.'" *Id.* at *6. The *Downs* court found that the statements in the letter to the editor regarding the history of the pertinent legal actions were accurate. The court simply concluded that the use of the term "baseless" did not "transform" the "otherwise accurate summary into a statement with a defamatory meaning." *Id.* at *16. The statement made by Mr. Haverstick is dramatically different.

Mr. Haverstick stated Griesing's "allegations are outrageous and wrong and [Kleinbard] will put the lie to them…." In an effort to analogize Mr. Haverstick's statement with the statement in *Downs*, Kleinbard asserts that "put the lie to" merely means "to refute or counter something." ECF No. 12 at 2. It is a poor reflection on the profession that a law firm representing another law firm could make the audacious assertion that the statement "put the lie to" does not mean that the speaker is calling the subject a "liar." In fact, to reach this conclusion, Kleinbard omits the second portion of the very definition it cites. The full definition of "put the lie to"

5

as defined by *The Free Dictionary* (*see* ECF No. 12 at n. 1) is "[t]o refute or counter something; ***to show something to be incorrect or false***." The Free Dictionary, Put the lie to, https://idioms.thefreedictionary.com/put+the+lie+to (last accessed Sep. 6, 2022) (emphasis added). While attorneys engaged in professional, albeit zealous, discourse may use hyperbole and claim the other's client's claims are "baseless," they should not and do not—at least in Griesing's experience—call each other liars.

In contrast to the statements in *Downs*, Mr. Haverstick's statement is more akin to the statement made by the defendant in *Burns v. Cooper*, 244 A.3d 1231, 1234-37 (Pa. Super. Ct. 2020), *reargument denied* (Oct. 14, 2020), *appeal denied*, 252 A.3d 235 (Pa. 2021) to an insurance representative that the plaintiff "was a liar who could not be trusted." The *Burns* court properly found that statement capable of a defamatory meaning because it "indicat[ed] [the plaintiff] filed a fraudulent insurance claim." Here, Mr. Haverstick indicated Griesing was lying about its claims filed in a federal court and his reference to the claims being "outrageous" further underscores his intent to paint Griesing as a liar and as unethical. In the context of a law firm, which routinely appears on behalf of clients in various tribunals, this statement would "tend to so harm [Griesing's] reputation as to lower [it] in the estimation of the community…." *Id.* (quoting *Baird v. Dun and Bradstreet*, 285 A.2d 166, 169 (Pa. 1971)) (internal alterations omitted). Thus, Mr.

Haverstick's statement is defamatory and is properly the basis of Griesing's proposed Supplemental Complaint.

> **B. Griesing does not need to plead special harm because Mr. Haverstick's statement constitutes defamation *per se*.**

In its Opposition, Kleinbard clearly omits any reference to defamation *per se*. Kleinbard neither challenges Griesing's assertion that Mr. Haverstick's statement constituted defamation *per se* (*see* ECF No. 7-2 at ¶¶ 127-36; 174-86) nor points the Court to any of the voluminous, controlling precedents holding a defamation plaintiff need not plead special damages when they assert the defamatory statement was defamation *per se*. *Marcone v. Penthouse Int'l Mag. For Men*, 754 F.2d 1072, 1079 (3d Cir. 1985). While Kleinbard concedes the point, it is worth acknowledging that "[d]efamation *per se* can be either words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct." *Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435, 461 (E.D. Pa. 2021) (internal quotations omitted). Here, Mr. Haverstick's statement that "the allegations are outrageous and wrong and [Kleinbard] will put the lie to them when we respond to the complaint," imputes business misconduct and a criminal offense onto Griesing as it suggests that Griesing lied to a federal court in an unethical manner. Therefore, the statement is defamation *per se*, and is properly the basis of Griesing's claim.

### C. Mr. Haverstick's statement was not absolutely privileged as a matter of law and the facts support the conclusion that any qualified privilege was abused.

Kleinbard's argument on this point is strained and disjointed. First, it recites a legal framework for Pennsylvania's absolute judicial privilege, which it acknowledges is limited to communications issued in the regular course of a judicial proceeding and extends only to statements made in open court, statements made in preliminary conferences, and communications between counsel. ECF No. 12 at 11-12. Recognizing that statements made to a news publication by the spokesperson for a party to a lawsuit are not "issued in the regular course of a judicial proceeding," Kleinbard abruptly changes its analysis to Pennsylvania's qualified privilege. ECF No. 12 at 12-13.

Kleinbard cites *Heyward v. Stouffer*, Civ. A. No. 91-1452, 1991 WL 275604, at *1 (E.D. Pa. Dec. 23, 1991) for the proposition that attorneys and parties to litigation retain a qualified privilege when they "fairly report[] on judicial proceedings." The *Heyward* court found that the plaintiffs who held a press conference informing the public of two lawsuits they filed that day were entitled to claim a qualified privilege in connection with the defamation claim defendants asserted against them. During that press conference, the plaintiffs' attorney allegedly compared two cases of discrimination and implied that the defendants' "form of discrimination was worse and that the defendants were evil, bad people."

8

*Id.* at *3. Based on these allegations, the *Heyward* court held that a jury would need to determine whether the plaintiffs abused any qualified privilege they otherwise had. *Id.*

The purpose of the qualified privilege is to protect <u>reporting</u> on judicial proceedings and, even if the privilege were to apply, it is lost if the report is not both accurate and fair. The privilege can be lost if "the person commenting overly embellishes the charges in the complaint or an account of a proceeding . . . or adds unwarranted or unfair comment." *Id.* at *2 (citations omitted); *Oweida v. Trib.-Rev. Pub. Co.*, 599 A.2d 230, 233-35 (Pa. Super. Ct. 1991). That is exactly what happened here.

Even if providing a quote to a reporter could itself be considered "reporting" for the purposes of the qualified privilege, Mr. Haverstick abused that privilege by adding unwarranted or unfair comment—calling the other party to a lawsuit outrageous and a liar. Thus, Mr. Haverstick's statement is not protected as a matter of law by any judicial privilege, qualified or otherwise, and is properly the basis for Griesing's defamation claim set forth in the Supplemental Complaint.

## III. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully prays that this Court grant Griesing Law's Motion for Leave to File a Supplemental Complaint.

Dated: September 8, 2022

Respectfully submitted,

GRIESING LAW, LLC

***/s/ Julie Negovan, Esq.***
Julie Negovan, Esq.
R. Keith Petersen, Esq.
Identification Nos. 81231; 328934
1880 John F. Kennedy Blvd., Suite 1800
Philadelphia, PA 19103
(215) 618-3720
(215) 814-9049 [fax]
jnegovan@griesinglaw.com
kpetersen@griesinglaw.com
***Attorneys for Plaintiff***