# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GRIESING LAW, LLC,

      Plaintiff,

      v.

KLEINBARD LLC,

      Defendant

CIVIL ACTION NO. 2:22-cv-03302

---

**BRIEF IN SUPPORT OF THE MOTION OF
DEFENDANT KLEINBARD, LLC, TO DISMISS PLAINTIFF'S
COMPLAINT FOR FAILURE TO STATE A CLAIM**

**HOLLAND & KNIGHT LLP**
Carolyn P. Short
Carolyn.Short@hklaw.com
James D. Schultz
James.Schultz@hklaw.com
Nipun J. Patel
Nipun.Patel@hklaw.com
Cira Centre
2929 Arch Street, Suite 800
Philadelphia, PA 19104
(215) 252-9600
*Attorneys for Defendant*

Dated: October 13, 2022

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Kleinbard, LLC ("Kleinbard" or "Defendant") respectfully submits this Brief in support of its Motion to Dismiss the Complaint of Plaintiff Griesing Law, LLC ("Griesing" or "Plaintiff") with prejudice.

## I.   <u>PRELIMINARY STATEMENT</u>

Plaintiff brings six claims against Kleinbard: 1) Breach of Contract under the LOI's between Griesing and Kleinbard; 2) Breach of Contract as a third-party beneficiary to OGC contracts with Kleinbard; 3) Unjust Enrichment; 4) Tortious Interference with contractual relations and prospective contractual relations between Griesing and OGC; 5) Negligent Misrepresentation and/or Concealment related to the LOIs and contracts; and 6) Fraudulent Misrepresentation and/or Concealment related to the LOIs and contracts.  All six of these claims are based on Kleinbard's alleged failure to give Griesing the "opportunity" to perform an estimated 20% of the legal services and earn fees attendant to those services as Kleinbard's subcontractor under certain agreements to provide legal services to the Commonwealth of Pennsylvania.  Plaintiff's Complaint should be dismissed in its entirety as all six of Plaintiff's claims are implausible.

Plaintiff's tort claims are barred by the gist of the action doctrine as they arise from a purely alleged contractual duty and must be dismissed with prejudice as they

cannot serve as the basis for their tort claims under well-established Pennsylvania law.

Further, Plaintiff's unjust enrichment claim should be dismissed with prejudice as the parties' relationship is founded on an alleged contract. Under Pennsylvania law, any quasi-contractual claim is inapplicable to a relationship allegedly formed on the basis of a written agreement or express contract.

Lastly, Plaintiff's breach of contract claims and tortious interference claim should be dismissed as they are predicated upon alleged breaches and/or injuries which do not exist as the term for Kleinbard to fulfill its alleged contractual duties remains open and Plaintiff seeks impermissible speculative damages.

## II.    PLAINTIFF'S FACTUAL ALLEGATIONS

The Commonwealth of Pennsylvania routinely contracts for the provision of goods and services for the Commonwealth using a range of procedures including Requests for Proposals ("RFP"). Compl. ¶ 8. The Commonwealth's RFP processes and procedures, including those for legal services through the Office of General Counsel ("OGC"), include requirements regarding diversity. Compl. ¶¶ 9-17. Plaintiff is approved as a Small Diverse-owned Business ("SDB") according to the Commonwealth's criteria. Compl. ¶ 18. Plaintiff has been appointed as either a prime contractor, a subcontractor or both pursuant to several OGC RFPs and expects to receive additional appointments in the future. Compl. ¶ 19.

2

Appointment alone under the RFP process does not guarantee that work will be assigned to the prevailing firm. Compl. ¶ 55. The OGC has discretion in determining whether to assign work to a particular law firm especially when more than one firm is selected under an RFP. Compl. ¶ 123. Indeed, the at-issue contracts between Kleinbard and OGC state "[t]he purpose of this appointment is for the Firms to satisfy a need for litigation and other urgent legal services that may arise on an *ad hoc* basis." Compl. Ex E, p. 1 ¶ 1; Ex. G, p. 1 ¶ 1; and Ex. I, p. 1 ¶ 1.

The Bureau of Diversity, Inclusion and Small Business Development ("BDISBO") Equal Opportunity Manager, Curtis Burwell, has informed Griesing law, several times, that under SDB subcontracts, the prime contractor did not have to allocate the contracted percentage of work or fees evenly over the course of the prime contract. Burwell further stated to Griesing that primes such as Kleinbard only had to assure that by the time the contract was completed, the SDB subcontractor had been afforded the opportunity to perform its contracted percentage and the SDB subcontractor be paid at least its minimum guaranteed percentage of fees or more commensurate with the work performed. Compl. ¶ 77.

During the period from July 2015 through the filing of the Complaint, Plaintiff agreed to serve as Kleinbard's SDB subcontractor on at least eight separate RFPs and the parties executed Letters of Intent ("LOI") which Kleinbard included in its RFP submissions to the Commonwealth. Compl. ¶ 44.

First, the parties signed a LOI dated July 18, 2015 in connection with RFP OLRSF-2015-1, however the Commonwealth ultimately canceled that RFP. Compl. ¶¶47-48.

Second, on or about August 20, 2015, the parties submitted together to work on the Commonwealth's RFP relating to Reliance Insurance Company, however, they were not selected by the Commonwealth. Compl. ¶ 49.

Third, on or about September 15, 2015, the parties entered a LOI in connection with RFP OGC-2015-39 related to First Sealord Surety. Compl. ¶ 50.

Fourth, on or about June 21, 2016, the parties entered a LOI in connection with RFP OGC-2016-09 for Complex Litigation & Litigation Consultants. Compl. ¶ 51. The LOI states:

> If Kleinbard is the successful vendor, Greising Law, LLC shall provide complex litigation and litigation consulting services **as needed** during the term of the engagement….
>
> These Services will represent 20% of the total cost of an engagement between Kleinbard LLC and the Commonwealth for the initial term of the contract. **Dependent on** final negotiated contract pricing and actual contract usage or volume, **it is expected** that Griesing Law, LLC will received an estimated 20% of the billable work during the initial contract term.

Compl. Ex. C (emphasis added).

In response to their RFP proposal, the parties were informed by OGC on November 14, 2016, that Kleinbard had been appointed to be eligible for work under OGC-2016-09. Compl. ¶ 53. OGC and Kleinbard entered into a contract No. OGC-

4

2019-CLLC-23 (the "Second OGC Kleinbard Contract") through which Kleinbard received at least $85,000 for legal services thereunder.  Compl. ¶ 93.

Fifth, on or about August 10, 2016, the parties entered a LOI in connection with RFP OGC-2016-16 related to Insurance Receivership Counsel Legal Services. Compl. ¶ 52.

Sixth, on or about November 22, 2016, the parties entered a LOI in connection with RFP OGC-2016-22 General Litigation & Emergency Council.  The LOI states:

> If Kleinbard LLC is the successful vendor, Griesing Law, LLC shall provide general litigation and emergency counsel support services to Kleinbard's litigation team during the initial term of the prime contract and during any extensions, options or renewals periods of the prime contract exercised by the Commonwealth….

> These services represent 20% of the total cost in Kleinbard LLC's cost submittal for the initial term of the contract.  Dependent on final negotiated contract pricing and actual usage or volume, it is expected that Griesing Law, LLC will receive an estimated $52,750.00 during the initial contract term.

Compl. Ex. F.

In response to their RFP proposal, the parties were informed by OGC on May 3, 2017, that Kleinbard had been appointed to be eligible for work under OGC-2016-22 and Kleinbard executed a contract with OGC for the "OGC Kleinbard Project". Compl.  ¶¶ 55 & 62.  In October 2018, Kleinbard met with Griesing to discuss the work being performed in connection with OGC-2016-22.   Compl. ¶¶ 64-67. Thereafter, Kleinbard assigned Griesing work under OGC-2016-22.  Compl. ¶ 68.

5

Griesing submitted an invoice for the work it performed under OGC-2016-22 and the invoice was paid by Kleinbard on or about September 17, 2019.  Compl. ¶ 75. During the period of July 2019 through June 2022 Griesing inquired as to further work under the OGC Kleinbard project several times with Kleinbard and OGC and was assured that Griesing would be given the opportunity to participate in the legal services provided under the project.  Compl. ¶¶  76-82.  During this interval, Kleinbard allegedly told Griesing Law that when the OGC Kleinbard Project resumed, Kleinbard would give Griesing Law the opportunity to provide legal services to meet the 20% minimum requirement and receive the attendant fees including enough work to that Kleinbard could make up for the deficit in allocation of work in the earlier phases.  Compl. ¶ 85.  Griesing claims it recently learned that Kleinbard has been paid at least $125,000 on RFP OGC-2016-22.  Compl. ¶ 83.

Seventh, on or about August 8, 2019. Kleinbard sent to Griesing a LOI in connection with RFP OGC-2019-10 related to complex litigation.  Compl. ¶ 56.  The LOI states:

> If Offeror [Kleinbard] is the successful vendor, the referenced SDB/SB [Griesing] shall perform the following work, goods or services during the initial term of the prime contract and during any extensions, options or renewal periods of the prime contract exercised by the Commonwealth, as more specifically set forth below:
>
> Griesing Law, LLC will provide litigation services as needed during the term of engagement between Kleinbard LLC and the Commonwealth and during any renewal periods provided for under the engagement.

> These services represent 20% of the total cost in the Offeror's cost submittal for the initial term of the contract.

Compl. Ex. H.  Unlike the other LOIs, this LOI is *not* executed by Griesing.  Compl. Ex. H.

In response to their RFP proposal, the parties were informed by OGC on December 11, 2019, that Kleinbard had been appointed to be eligible for work under OGC-2019-10/13.  Compl.  ¶ 57.  On or about December 11, 2019, Kleinbard entered into a contract with OGC (the "December 2019 OGC Kleinbard Contract") under contract number OGC-2019-CLLC-23.  Compl.  ¶ 86.  On March 1, 2020, OGC and Kleinbard entered into an engagement letter flowing from OGC-2019-23 and the December 2019 OGC Kleinbard Contract whereby OGC engaged Kleinbard to provide additional services and incorporated by reference the December 2019 OGC Kleinbard Contract.  Compl. ¶ 90.  Griesing claims it recently became aware that Kleinbard had received fees pursuant to the December 2019 OGC Kleinbard Contract of at least $138,000.  Compl. ¶ 92.

Eighth, on or about February 12, 2020, the parties entered a LOI in connection with RFP OGC-2029-01 related to the Pennsylvania Insurance Department.  Compl. ¶ 58.

## III.   <u>LEGAL STANDARD</u>

Although a complaint does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief under Federal Rule of Civil Procedure

12(b)(6) requires "more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Specifically, the factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.*

To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Id.* (quoting *Papasan*, 478 U.S. at 286). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

## IV.   ARGUMENT

### A.   Plaintiff's Tort Claims are Barred by the Gist of the Action Doctrine

The "gist of the action" doctrine is "designed to maintain the conceptual distinction between breach of contract claims and tort claims." *eToll, Inc. v. Elias/Savion Adv., Inc.,* 811 A.2d 10, 14 (Pa. Super. Ct. 2002).  Under Pennsylvania law, the gist of the action doctrine prevents a purely contractual duty from serving as the basis for a tort claim.  *SodexoMAgic, LLC v. Drexel University*, 24 F.4th 183, 216 (3d. Cir. 2022) (citing *Bruno v. Erie Ins. Co.*, 630 Pa. 79, 106 A.3d 48, 65 (2014)).

"When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort." *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds,* Inc., 40 F.Supp.2d 644, 651 (W.D.Pa. 1999).  To make this determination, the court must ascertain the source of the duties allegedly breached. *Sunburst Paper, LLC v. Keating Fibre Int'l.,* No. CIV.A.06-3957, 2006 WL 3097771, at *2 (E.D.Pa. Oct. 30, 2006).  The gist of the action doctrine bars tort claims: "(1) arising solely from a contract between the parties ...; (2) where the duties allegedly breached were created and grounded in the contract itself ...; (3) where the liability stems from a contract ...; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly

dependent on the terms of a contract." *eToll,* 811 A.2d at 19 (internal quotation marks and citations omitted). "In other words, if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort." *Sunburst Paper,* 2006 WL 3097771, at \*2. Whether the gist of the action doctrine applies in any particular setting is a question of law. *Alexander Mill Servs., LLC v. Bearing Distribs., Ins.,* No. CIV.A.06-1116, 2007 WL 2907174, at \*8 (W.D.Pa. Sep. 28, 2007).

The gist of the action doctrine generally bars fraud claims in cases where a defendant's alleged failure to perform its duty under the contract is transformed into a claim that this failure amounts to fraud. *Asbury Auto. Group LLC v. Chrysler Ins. Co.,* No. CIV.A.01-3319, 2002 WL 15925, at \*3 (E.D.Pa. Jan. 7, 2002); *see also Horizon Unlimited, Inc. v. Silva,* No. CIV.A.97-7430, 1998 WL 88391, at \*4-5 (E.D.Pa. Feb. 26, 1998) (holding that gist of the action doctrine barred fraud and negligent misrepresentation claims premised on allegedly false statements made in promotional literature about the product when the subsequent contract disclaimed any prior representations); *Factory Mkt. Inc. v. Schuller Intern,* 987 F.Supp. 387, 394-95 (E.D.Pa. 1998) (finding that gist of the action doctrine barred fraud claims against roofer who agreed and repeatedly attempted to repair a chronically leaking roof, even though he knew from the outset that it was beyond repair, as the obligation to make the roof watertight was imposed by the contract, not in tort).

Further, where the misrepresentation is allegedly founded upon pre-contractual statements that are the basis for the claim concern specific duties that the parties later outlined in writing, courts have repeatedly dismissed such claims as sounding in contract and, thus, barred by the gist of the action doctrine. *See, e.g., Williams v. Hilton Group, PLC,* 93 Fed. Appx. 384, 386-387 (3d Cir. 2004) (concluding that where defendants induced plaintiffs into committing to buying gaming assets for a certain price on an exclusive basis while secretly marketing properties to other buyers, the gravamen of the fraud in the inducement claim sounded in contract and was barred by the gist of the action doctrine); *DeLage Landen Fin. Servs., Inc. v. Barton Nelson, Inc.,* No. CIV.A.08-530, 2008 WL 4791891, at *6-7 (E.D.Pa. Nov. 4, 2008) (dismissing fraudulent inducement claim where the alleged pre-contractual misrepresentations were directly addressed by the written contract); *Tier1 Innovation, LLC v. Expert Tech. Group, LP,* No. CIV.A.06-4622, 2007 WL 1377664, at *4 (E.D.Pa. May 8, 2007) (dismissing allegations of fraud in the inducement and negligent misrepresentation on grounds that they were both "inextricably intertwined" with the alleged failure to perform under the contract, as the claims pertained to representations regarding party's expertise and ability to perform its duties under the agreement).

Here, just as with Plaintiff's unjust enrichment claim, it is abundantly clear that Plaintiff alleges the parties duties were governed by the LOIs and the contracts

between Kleinbard and OGC.   Indeed, Plaintiff states in its Count V claim for Fraudulent Misrepresentation "[a]t all relevant times, Kleinbard and its agents acted outrageously, willfully, wantonly, and/or recklessly in connection to its misrepresentations regarding its intent to assign Griesing Law work as the SDB subcontractor on the OGC contracts."  Compl. ¶ 159.  Also, in its Count VI claim for negligent misrepresentation, Plaintiff states "Kleinbard made misrepresentations to and/or concealed facts from Griesing Law that were material to Griesing Law's entry into the Letters of Intent where Kleinbard should have known the falsity." Compl. ¶ 161.

As such, Plaintiff's claims arise from a purely contractual duty and therefore cannot serve as the basis for their tort claims and Plaintiff's tort claims must be dismissed with prejudice.

### B.   Plaintiff's Contractual Claims Should be Dismissed as no Breach has Occurred and Plaintiff has not Suffered any Non-Speculative Damages

A plaintiff seeking to state a breach of contract claim must demonstrate "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages."  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

Here, Plaintiff has not pled sufficient facts to establish that Kleinbard has breached a duty imposed by the alleged agreements, or that Plaintiff has suffered non-speculative damages because the alleged duty to provide Griesing an estimated 20 percent of the legal services and fees is open-ended.  As long as the underlying contract, engagement, assignment, or project is still open, no breach or non-speculative damages can be established until the at-issue matter is concluded.  As the Commonwealth has repeatedly told Plaintiff, a prime contractor does not have to allocate the contracted percentage of work or fees evenly over the course of the prime contract and only has to assure that by the time the contract was completed that the subcontractor had been afforded the opportunity to perform its contracted percentage.  Compl. ¶ 77.

Plaintiff pleads contractual obligations related to eight separate RFPs.  First, the parties signed a LOI dated July 18, 2015 in connection with RFP OLRSF-2015-1, however the Commonwealth ultimately canceled that RFP.  Compl. ¶¶47-48.

Second, on or about August 20, 2015, the parties submitted together to work on the Commonwealth's RFP relating to Reliance Insurance Company, however, they were not selected by the Commonwealth.  Compl. ¶ 49.

Third, on or about September 15, 2015, the parties entered a LOI in connection with RFP OGC-2015-39 related to First Sealord Surety.  Compl.  ¶ 50.

13

Fourth, on or about June 21, 2016, the parties entered a LOI in connection with RFP OGC-2016-09 for Complex Litigation & Litigation Consultants.  Compl. ¶ 51. The LOI states:

> If Kleinbard is the successful vendor, Greising Law, LLC shall provide complex litigation and litigation consulting services **as needed** during the term of the engagement….
>
> These Services will represent 20% of the total cost of an engagement between Kleinbard LLC and the Commonwealth for the initial term of the contract. **Dependent on** final negotiated contract pricing and actual contract usage or volume, **it is expected** that Griesing Law, LLC will received an estimated 20% of the billable work during the initial contract term.

Compl. Ex. C (emphasis added).

In response to their RFP proposal, the parties were informed by OGC on November 14, 2016, that Kleinbard had been appointed to be eligible for work under OGC-2016-09.  Compl.  ¶ 53.  OGC and Kleinbard entered into the Second OGC Kleinbard Contract through which Griesing alleges Kleinbard received at least $85,000 for legal services thereunder.  Compl. ¶ 93.

Fifth, on or about August 10, 2016, the parties entered a LOI in connection with RFP OGC-2016-16 related to Insurance Receivership Counsel Legal Services. Compl. ¶ 52.

Sixth, on or about November 22, 2016, the parties entered a LOI in connection with RFP OGC-2016-22 General Litigation & Emergency Council.  The LOI states:

14

> If Kleinbard LLC is the successful vendor, Griesing Law, LLC shall provide general litigation and emergency counsel support services to Kleinbard's litigation team during the initial term of the prime contract and during any extensions, options or renewals periods of the prime contract exercised by the Commonwealth….
>
> These services represent 20% of the total cost in Kleinbard LLC's cost submittal for the initial term of the contract.  Dependent on final negotiated contract pricing and actual usage or volume, it is expected that Griesing Law, LLC will receive an estimated $52,750.00 during the initial contract term.

Compl. Ex. F.

In response to their RFP proposal, the parties were informed by OGC on May 3, 2017, that Kleinbard had been appointed to be eligible for work under OGC-2016-22 and Kleinbard executed a contract with OGC for the OGC Kleinbard Project. Compl. ¶¶ 55 & 62.  In October 2018, Kleinbard met with Griesing to discuss the work being performed in connection with OGC-2016-22.   Compl. ¶¶ 64-67. Thereafter, Kleinbard assigned Griesing work under OGC-2016-22.  Compl. ¶ 68. Griesing submitted an invoice for the work it performed under OGC-2016-22 and the invoice was paid by Kleinbard on or about September 17, 2019.  Compl. ¶ 75. During the period of July 2019 through June 2022 Griesing inquired as to further work under the OGC Kleinbard project several times with Kleinbard and OGC and was assured that Griesing would be given the opportunity to participate in the legal services provided under the project.   Compl. ¶¶  76-82.  During this interval, Kleinbard allegedly told Griesing Law that when the OGC Kleinbard Project

15

resumed, Kleinbard would give Griesing Law the opportunity to provide legal

services to meet the 20% minimum requirement and receive the attendant fees

including enough work to that Kleinbard could make up for the deficit in allocation

of work in the earlier phases.  Compl. ¶ 85.  Griesing claims it recently learned that

Kleinbard has been paid at least $125,000 on RFP OGC-2016-22.  Compl. ¶ 83.

Seventh, on or about August 8, 2019. Kleinbard sent to Griesing a LOI in

connection with RFP OGC-2019-10 related to complex litigation.  Compl. ¶ 56.  The

LOI states:

> If Offeror [Kleinbard] is the successful vendor, the referenced SDB/SB
> [Griesing] shall perform the following work, goods or services during
> the initial term of the prime contract and during any extensions, options
> or renewal periods of the prime contract exercised by the
> Commonwealth, as more specifically set forth below:
>
> Griesing Law, LLC will provide litigation services as needed during the
> term of engagement between Kleinbard LLC and the Commonwealth
> and during any renewal periods provided for under the engagement.
> These services represent 20% of the total cost in the Offeror's cost
> submittal for the initial term of the contract.

Compl.  Ex. H.  Unlike the other LOIs, this LOI is *not* executed by Griesing.  Compl.

Ex. H.

In response to their RFP proposal, the parties were informed by OGC on

December 11, 2019, that Kleinbard had been appointed to be eligible for work under

OGC-2019-10/13.  Compl.  ¶ 57.  On or about December 11, 2019, Kleinbard

entered into the December 2019 OGC Kleinbard Contract under contract number

OGC-2019-CLLC-23.   Compl.   ¶ 86.   On March 1, 2020, OGC and Kleinbard entered into an engagement letter flowing from OGC-2019-23 and the December 2019 OGC Kleinbard Contract whereby OGC engaged Kleinbard to provide additional services and incorporated by reference the December 2019 OGC Kleinbard Contract.  Compl. ¶ 90.  Griesing recently became aware that Kleinbard had received fees pursuant to the December 2019 OGC Kleinbard Contract of at least $138,000.  Compl. ¶ 92.

Eighth, on or about February 12, 2020, the parties entered a LOI in connection with RFP OGC-2029-01 related to the Pennsylvania Insurance Department.  Compl. ¶ 58.

While Plaintiff raises these eight matters, it is axiomatic that if Kleinbard was not actually awarded work and earned fees under the RFPs then there is no obligation to afford Griesing the opportunity to perform 20% of legal services that do not exist.[1] As such, as pled by Plaintiff, five of the eight (1-3, 5 & 8 *supra*) underlying RFPs and any LOIs associated with them are irrelevant to the claims as Plaintiff has not pled that any work was performed or any fees generated under those five matters.

Of the three remaining matters (4, 6 & 7 *supra*), the nature of the contractual obligations of all three are open-ended and not defined by terms regarding periodic

---

[1] In contrast, Plaintiff appears to seek payment for work it has not performed.  This attempt to lay claim to a flat 20 percent of Kleinbard's earned fees regardless of the amount of work performed by Griesing may violate the Rules of Professional Conduct on fee sharing.

reconciliation or accounting.   The contracts and LOIs that form the basis of Plaintiff's claims do not contain terms stating that Griesing must be afforded 20% of all work performed each month, quarter, or year.  Compl. Exs. C, E, F, G, H & I. Indeed, the at-issue contracts between Kleinbard and OGC state "[t]he purpose of this appointment is for the Firms to satisfy a need for litigation and other urgent legal services that may arise on an *ad hoc* basis."  Compl. Ex. E at p. 1 ¶ 1; Ex. G at p. 1 ¶ 1; and Ex. I at p. 1 ¶ 1.

Therefore, as long as the contract or engagement, is still open, no breach or non-speculative damages can be established based on an alleged failure to provide a certain percentage of the open-ended work.  Any accounting in that regard naturally must be performed when the matter has concluded.  While Plaintiffs plead that they presently have not been afforded the opportunity to perform 20% of the work performed to date, that may yet change before the applicable matters are concluded.

Indeed, Plaintiff acknowledges and pleads this very fact in the Complaint. BDISBO Equal Opportunity Manager, Curtis Burwell, has informed Griesing law, several times, that under SDB subcontracts, the prime contractor did not have to allocate the contracted percentage of work or fees evenly over the course of the prime contract.  Burwell further stated to Griesing that primes such as Kleinbard only had to assure that by the time the contract was completed, the SDB subcontractor had been afforded the opportunity to perform its contracted percentage

and the SDB subcontractor be paid at least its minimum guaranteed percentage of fees or more commensurate with the work performed.  Compl. ¶ 77.

Relatedly, any damages pled by Plaintiff remain impermissibly speculative until the underlying at-issue matters are concluded.  While Plaintiff may claim, for example, that it has only been afforded 5% of the work to date (or any other percentage including 0%) and therefore is owed another 15% of the fees billed by Kleinbard, those numbers remain a moving target while more work may be performed and fees generated.  For instance, if further work is required on a matter and Kleinbard affords Griesing the opportunity to perform that work, the alleged percentages of work performed, fees billed, and any alleged damages, all change and may result in no breach of the contract.

In fact, Griesing has pled that Kleinbard has repeatedly stated its intention to undertake precisely this course of action.  During the period of July 2019 through June 2022 Griesing claims it inquired as to further work under the OGC Kleinbard project several times with Kleinbard and OGC and was assured that Griesing would be given the opportunity to participate in the legal services provided under the project.  Compl. ¶¶  76-82.  During this interval, Griesing claims that Kleinbard assured Griesing Law that when the OGC Kleinbard Project resumed, Kleinbard would give Griesing Law the opportunity to provide legal services to meet the 20% minimum requirement and receive the attendant fees including enough work to that

Kleinbard could make up for the deficit in allocation of work in the earlier phases. Compl. ¶ 85.

As such, no breach or tortious interference has occurred, and may or may not ever occur, and any alleged injuries or damages suffered by Plaintiff have not yet occurred.  Therefore, Plaintiff has not sufficiently pled any of its causes of action for breach of contract or tortious interference, and all must be dismissed.

### C.   Plaintiff's Unjust Enrichment Claim is Barred as the Relationship Between the Parties is Founded on a Written Agreement

Under Pennsylvania law, "the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Benefit Trust Life Ins. Co. v. Union Nat. Bank,* 776 F.2d 1174 (3d Cir. 1985) (quoting *Schott v. Westinghouse Electric Corp.,* 436 Pa. 279, 259 A.2d 443 (1969)).  Where an express contract governs the relationship of the parties, a party's recovery is limited to the measure provided in the express contract; and where the contract "fixes the value of the services involved," there can be no recovery under a *quantum meruit* theory.  *Murphy v. Haws & Burke,* 235 Pa. Super. 484, 489, 344 A.2d 543, 546 (1975) (where an implicit contract existed between attorney and law firm, no separate *quantum meruit* recovery could be obtained).

Here, it is abundantly clear in the Complaint that Plaintiff alleges the parties' responsibilities were governed by the LOIs and the contracts with OGC.  Indeed, in

Plaintiff's Count III claim for unjust enrichment, it pleads, "Kleinbard has failed to pay Griesing Law in connection with its agreement to serve as the SBD subcontractor on Kleinbard's contracts with the OGC.  It would be inequitable and unjust to allow Kleinbard to retain the monetary benefits of the OGC contracts awarded without paying Griesing Law its 20% share of the fees."  Compl. ¶ 155.  As such, Plaintiff's claim for unjust enrichment should be dismissed with prejudice as the parties relationship is founded on a written agreement.

## V.  **CONCLUSION**

For all of the foregoing reasons, this Court should enter an Order dismissing Plaintiff's Complaint with prejudice.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

/s/ Carolyn P. Short
Carolyn P. Short
Carolyn.Short@hklaw.com
James D. Schultz
James.Schultz@hklaw.com
Nipun J. Patel
Nipun.Patel@hklaw.com
Cira Centre
2929 Arch Street, Suite 800
Philadelphia, PA 19104
(215) 252-9600

Dated: October 13, 2022          *Attorneys for Defendant*