IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| GRIESING LAW, LLC, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 22-3302 |
| | : | |
| KLEINBARD LLC, | : | |
| Defendant. | : | |

**O R D E R**

With a Complaint that often generates more heat than light, Plaintiff Griesing Law, LLC proceeds against Defendant Kleinbard LLC alleging breach of contract, unjust enrichment, tortious interference, fraudulent misrepresentation, and negligent misrepresentation.  (Compl. (Doc. No. 1) ¶¶ 126-62.)  Kleinbard moves to dismiss for failure to state a claim.  (Doc. No. 14.)  I will grant the Motion in part and dismiss the tort claims.

### I.      FACTUAL ALLEGATIONS

Griesing describes itself as "a small but highly qualified . . . law firm" wholly owned by a Florida resident, and describes Kleinbard as "a politically connected law firm with strong ties within the Commonwealth of Pennsylvania."  (Compl. at 1-3.)

Griesing's Complaint is, at points, difficult to understand.  As alleged, the Commonwealth employs a Small Diverse Business subcontractor initiative in connection with its Request for Proposal process.  (Pl.'s Resp. in Opp'n (Doc. No. 16) at 4.)  The Office of the General Counsel uses these SDB subcontractor and RFP processes in administering Contracts for Legal Services. (Id.)

Griesing is an approved SDB.  (Def.'s Br. in Supp. (Doc. No. 14-1) at 2.)  Since 2015, Griesing has agreed to serve as Kleinbard's SDB subcontractor on several RFPs, and Griesing and

1

Kleinbard have executed Letters of Intent that Kleinbard has included in its RFP submissions to the Commonwealth.  (Id. at 3.)

On June 21, 2016, Griesing and Kleinbard signed an LOI in connection with RFP OGC-2016-09 for Complex Litigation & Litigation Consultants.  (Def.'s Br. in Supp. at 4; Pl.'s Compl. Ex. C (Doc. No. 1-5).)  In response to the proposal, Griesing and Kleinbard were informed by OGC on November 14, 2016, that Kleinbard was eligible for work under the RFP.  (Def.'s Br. in Supp. at 4; Pl.'s Compl. Ex. E (Doc. No. 1-7).)  OGC and Kleinbard then executed contract number OGC-2016-CLLC-18, under which Kleinbard has received at least $85,000 for legal services.  (Def.'s Br. in Supp. at 4-5; Pl.'s Resp. Ex. A (Doc. No. 16-1).)

On November 22, 2016, Griesing and Kleinbard signed an LOI in connection with RFP OGC-2016-22 for "General Litigation & Emergency Council."  (Def.'s Br. in Supp. at 5; Pl.'s Compl. Ex. F (Doc. No. 1-8).)  OGC informed Griesing and Kleinbard on May 3, 2017, that Kleinbard was eligible for work under the RFP.  (Def.'s Br. in Supp. at 5.)  Kleinbard and the OGC then executed contract number OGC-2017-GLEC-22.  (Id.; Pl.'s Compl. Ex. G (Doc. No. 1-9); Pl.'s Resp. Ex. B (Doc. No. 16-2).)  In October 2018, Kleinbard assigned Griesing work under the contract.  (Def.'s Br. in Supp. at 5.)  On September 17, 2019, Kleinbard paid Griesing's invoice for the work it performed.  (Id. at 6.)

On August 8, 2019, Kleinbard sent Griesing an LOI in connection with RFP OGC-2019-10 related to complex litigation.  (Id.)  Griesing did not sign the LOI.  (Id. at 7; Pl.'s Resp. in Opp'n at 14; Pl.'s Compl. Ex. H (Doc. No. 1-10).)  OGC informed the Parties on December 11, 2019, that Kleinbard was eligible for work under the RFP.  (Def.'s Br. in Supp. at 7; Pl.'s Compl. Ex. I (Doc. No. 1-11).)  Kleinbard and OGC then executed contract number OGC-2019-CLLC-23.  (Def.'s Br. in Supp. at 7; Pl.'s Resp. Ex. C (Doc. No. 16-3).)

All three contracts executed by Kleinbard and OGC had an initial term of one year, with the option of two extensions (one year each).  (Pl.'s Resp. in Opp'n at 15; Pl.'s Resp. Exs. A, B, C.)  Accordingly, the initial terms of these contracts expired on November 14, 2017; May 3, 2018; and December 11, 2020, respectively.  The final extended terms expired on November 14, 2019; May 3, 2020; and December 11, 2022.  (Pl.'s Resp. in Opp'n at 15; Pl.'s Resp. Exs. A-C.)

## II.    PROCEDURAL HISTORY

On August 18, 2022, Griesing filed a six-Count Complaint, alleging that Kleinbard contracted with Griesing to act as Kleinbard's subcontractor in connection with Kleinbard's responses to RFPs for the provision of legal services to the Commonwealth.  (Compl. ¶¶ 15, 47, 49-58.)  As alleged, the Commonwealth awarded contracts to Kleinbard, which concealed those awards from Griesing.  (Id. ¶¶ 59-95.)  Griesing thus alleges that Kleinbard used Griesing's status as a "certified women-owned and diverse law firm," to obtain Commonwealth contracts, but then "cut [Griesing] out and lied to the Commonwealth about [Griesing's] ability and willingness to do the work."  (Id. at 1.)

Shortly after filing its Complaint, Griesing unsuccessfully moved to add a defamation claim against Kleinbard.  (Doc. Nos. 7, 15.)  Kleinbard now moves to dismiss the Complaint, urging that "all six of Plaintiff's claims are implausible."  (Doc. No. 14.)  Kleinbard argues that Griesing's tort claims are barred by the gist of action doctrine, and that because no contract breach has occurred, Griesing's damages are merely speculative.  (Def.'s Br. in Supp. at 9, 12.)  Griesing disagrees.  (Pl.'s Resp. in Opp'n at 13, 21.)  In its Reply, Kleinbard adds that Griesing failed to exhaust contractual/administrative remedies.  (Doc. No. 17 at 1.)  The matter is fully briefed.

### III.   LEGAL STANDARDS

I must accept as true Griesing's well-pled factual allegations and make all reasonable inferences in its favor. See Fed. R. Civ. P. 12(b)(6); In re Rockefeller Ctr. Props., Inc., 311 F.3d 198, 215 (3d Cir. 2002).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  Accordingly, a Rule 12(b)(6) motion "should be granted when it appears to a certainty that no relief can be granted under any set of facts which could be proved."  Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc., 694 F.3d 340, 350 (3d Cir. 2012).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  I may also consider documents "integral to or explicitly relied upon in the complaint."  In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).

### IV.   DISCUSSION

#### A. Exhaustion

"An issue is waived unless a party raises it in its opening brief."  Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994); see also Ballas v. Tedesco, 41 F. Supp. 2d 533 n.2 (D.N.J. 1999) ("A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." (citing Int'l Raw

Materials, Ltd. v. Stauffer Chem. Co., 978 F.2d 1318, 1327 n.11 (3d Cir. 1992))).  Accordingly, I

should "decline[] to consider arguments raised for the first time in a Reply brief." Hayes v. Silvers,

Langsam & Weitzman, P.C., 441 F. Supp. 3d 62, 66 n.4 (E.D. Pa. 2020).  Kleinbard raised its

exhaustion argument for the first time in its Reply Brief.  (Compare Def.'s Br. in Supp., with Doc.

No. 17.)  Kleinbard thus "waived its pre-conditions argument by not raising it sooner."  (Doc. No.

18 at 2.)

### B.  Breach of Contract

Griesing proceeds as a contracting party with respect to the LOIs and a third-party

beneficiary with respect to the contracts between Kleinbard and the OGC.  It is Kleinbard's

purported breach of these six agreements that is the gravamen of this dispute.

Kleinbard urges that because no breach of the OGC contracts has yet occurred, any

damages that Griesing has suffered are impermissibly speculative.  (Def.'s Br. in Supp. at 13 ("As

long as the underlying contract . . . or project is still open, no breach or non-speculative damages

can be established until the at-issue matter is concluded.").)  From Kleinbard's perspective, "the

nature of the contractual obligations of all three [contracts] are open-ended."  (Id. at 17.)  Kleinbard

has misread the contracts.

#### *Griesing as a Contracting Party*

As I have discussed, Griesing signed two of three Kleinbard LOIs.  (See Pl.'s Compl. Exs.

C, F, H; Def.'s Br. in Supp. at 4-6; Pl.'s Resp. in Opp'n at 14.)  The June 2016 LOI, signed by

both Parties, provides: "[Griesing] shall provide complex litigation and litigation consulting

services . . . . These services will represent 20% of the total cost of an engagement between

[Kleinbard] and the Commonwealth for the initial [one-year] term of the contract."  (Pl.'s Compl.

Ex. C.)  The November 2016 LOI, signed by both Parties, likewise provides: "[Griesing] shall

provide general litigation and emergency counsel support services . . . . These services represent

20% of the total cost in [Kleinbard's] cost submittal for the initial [one-year] term of the contract."

(Pl.'s Compl. Ex. F.)  Griesing did not sign the August 2019 LOI.  (Pl.'s Compl. Ex. H.)  Because

Kleinbard's award of legal work to Griesing is dependent on OGC's contracting with Kleinbard,

the enforceability of the LOIs is necessarily dependent on the viability of the Kleinbard-OGC

contracts.

To state a claim for breach of contract, Griesing must establish: (1) the existence of a

contract; (2) a breach of a duty imposed by the contract; and (3) resultant damages.  Stein v.

Matheson, 539 F. Supp. 3d 463, 472 (E.D. Pa. 2021).  Griesing alleges: (1) that the LOIs between

Griesing and Kleinbard constitute valid, binding contracts between the Parties; and (2) that

"Kleinbard failed to provide [Griesing] the opportunity to perform legal services for at least the

contractually agreed 20% of the work performed under OGC contracts and failed to pay [Griesing]

at least the contractually agreed 20% of the fees."  (Compl. ¶¶ 127, 129.)

*Prematurity*

Kleinbard initially contended that no breach has occurred because the OGC contracts have

yet to expire.  This is incorrect.

Paragraph 4 in each of the three OGC agreements sets out the "Term of Contract," which

"commence[s] on the Effective Date and shall end one year after this date, with the option of two

(2) additional one (1) year renewals."  (Pl.'s Resp. Ex. A ¶ 4; Pl.'s Resp. Ex. B ¶ 4; Pl.'s Resp. Ex.

C ¶ 4.)  The most recently executed OGC contract expired (at the latest) on December 11, 2022.

(See Pl.'s Resp. Ex. C.)  Moreover, in Kleinbard's final brief, it appears to concede that at least

two of the three OGC contracts have lapsed; it thus belatedly argues only that Griesing's

contractual claims respecting the December 2019 contract should be dismissed.  (Doc. No. 17 at 7.)

Griesing appended to its Complaint three letters from the OGC appointing Kleinbard to represent the Commonwealth and explicitly confirming OGC's understanding "that [Kleinbard] will be subcontracting with Griesing . . . throughout the timeframe of any engagement."  (Pl.'s Compl. Exs. E, G, I (Doc. Nos. 1-7, 1-9, 1-11).)  Although the letters were addressed to Kleinbard, Griesing was copied on each letter.  (See Pl.'s Compl. Exs. E, G, I.)

As a third-party beneficiary, Griesing "ha[s] standing to recover on [the OGC] contract[s]." Glob. Ground Support, LLC v. Glazer Enters., Inc., 581 F. Supp. 2d 669, 675 (E.D. Pa. 2008) (quoting Scarpitti v. Weborg, 609 A.2d 147, 150 (Pa. 1992)).  Because the OGC contracts have lapsed without Kleinbard "utilizing" Griesing for 20% of the legal work, Griesing has adequately alleged Kleinbard's breach of the contracts.  (See Pl.'s Compl. Exs. C, F, H.)

Accordingly, I will deny Kleinbard's Motion as to Counts I and II.

## C.  Unjust Enrichment

Griesing also alleges unjust enrichment as an alternative basis of recovery.  (Pl.'s Resp. in Opp'n at 20.)  A claim for unjust enrichment "is an appropriate alternative avenue of relief for the plaintiff to seek in the event no valid contract existed."  Cornell Cos., Inc. v. Borough of New Morgan, 512 F. Supp. 2d 238, 265 (E.D. Pa. 2007).

The elements of unjust enrichment are: "benefits conferred on one party by the other party, appreciation of such benefits, and acceptance and retention of such benefits under such circumstances that it would be inequitable for that party to retain the benefit without payment of value."  Loduca v. WellPet LLC, 549 F. Supp. 3d 391, 406 (E.D. Pa. 2021) (quoting McConaghy v. Bank of N.Y., 192 A.3d 1171, 1175 (Pa. Super. Ct. 2018)).

Griesing alleges that it "conferred a benefit on Kleinbard by agreeing to provide its services as a subcontractor because, without a SDB subcontractor, Kleinbard would not have received the OGC contracts."  (Compl. ¶ 142.)   As I have discussed, Kleinbard was awarded three OGC contracts.  Griesing asserts that "[i]t would be inequitable and unjust to allow Kleinbard to retain the monetary benefits of the OGC contracts awarded without paying [Griesing] 20% share of the fees."  (Id. ¶ 144.)

Griesing has pleaded facts sufficient to state a claim for unjust enrichment.  Accordingly, I will deny Kleinbard's Motion as to Count III.

**D.  The Gist of the Action Doctrine**

Griesing argues that its misrepresentation claims (Complaint Counts V and VI) are outside the contract terms and caused distinct damages, and that its tortious interference claim (Count IV) "is not even subject to the gist of action doctrine."  (Pl.'s Resp. in Opp'n at 3.)  I disagree.  Rather, it appears that Griesing is seeking impermissibly to transform the breach of contract allegations at the heart of this dispute into torts.

The gist of the action doctrine prohibits a plaintiff from bringing a tort claim that is actually a restatement of its breach of contract claim.  Ohama v. Markowitz, 434 F. Supp. 3d 303, 319 (E.D. Pa. 2020) (citing MRL Dev. I, LLC v. Whitecap Inv. Corp., 823 F.3d 195, 207 (3d Cir. 2016)).  The "critical determinative factor" in assessing whether the doctrine applies is "the nature of the duty alleged to have been breached."  Id. (quoting Bruno v. Erie Ins. Co., 106 A.3d 48, 68 (Pa. 2014)).

> If the facts . . . establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract.  If, however, the facts establish that the claim involves the defendant's violation of a broader social duty

8

owed to all individuals, . . . and, hence, exists regardless of the contract, then it must be regarded as a tort.

Bruno, 106 A.3d at 68 (citations omitted).

*Misrepresentation and Inducement*

Griesing alleges that it was fraudulently induced by Kleinbard to sign the LOIs "by stating that no work had been assigned by OGC under the prior RFPs and that it would actually provide work and fees to [Griesing] when such work was assigned."  (Pl.'s Resp. in Opp'n at 23-24 ("Kleinbard misrepresented its reasoning for not affording [Griesing] work and fees . . . in order to induce [Griesing] . . . (1) not [to] exercise its contractual rights under the LOIs; and (2) [to] partner with Kleinbard on additional RFP proposals to the OGC."))

It is apparent that the harm Kleinbard's fraud purportedly caused is the same as that caused by Kleinbard's purported breach of contract.  The gist of the action doctrine thus bars Griesing's fraudulent inducement claim.  Ohama, 434 F. Supp. 3d at 319; see also Wen v. Willis, 117 F. Supp. 3d 673, 682 n.2 (E.D. Pa. 2015) ("[F]raud in the inducement claims arising from the misrepresentation of an intention to perform under a contract are barred under the gist of the action doctrine.").

Because Griesing complains of a misrepresentation that involves "a specific promise to do something that [Kleinbard] would not ordinarily have been obligated to do but for the existence of the contract," the gist of the action doctrine requires dismissal of Griesing's misrepresentation claims.  Ohama, 434 F. Supp. 3d at 320.

Accordingly, I will grant Kleinbard's Motion as to Counts V and VI.

*Tortious Interference*

To state a tortious interference claim under Pennsylvania law, Griesing must show:

(1) . . . a contractual relationship or prospective contractual relationship between the plaintiff and another party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship or preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) . . . actual damage as a result of defendant's conduct.

A tortious interference claim "is barred by the gist of the action doctrine if it is not independent of a contract claim that is pled along with it." Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 621 (E.D. Pa. 2010) (quoting Alpart v. Gen. Land Partners, Inc., 574 F. Supp. 2d 491, 505 (E.D. Pa. 2008)); DePuy Synthes Sales, Inc. v. Globus Med., Inc., 259 F. Supp. 3d 225, 243 (E.D. Pa. 2017).  (But see Pl.'s Resp. in Opp'n at 3.)  Parties to a contract may not be subject to a tortious interference claim respecting that contract.  Alpart, 574 F. Supp. 2d at 505; see also Maier v. Maretti, 671 A.2d 701, 707 (Pa. Super. Ct. 1995) ("[T]here must be a contractual relationship between the plaintiff and a party other than the defendant.").

Griesing asserts that Kleinbard tortiously interfered with Griesing's existing and prospective contractual relationships with the Commonwealth.  (Compl. at 2.)  A prospective contractual relationship is "something more than a mere hope."  Neopart Transit, LLC v. CBM N.A. Inc., 314 F. Supp. 3d 628, 639 (E.D. Pa. 2018) (quoting BP Envtl. Servs., Inc. v. Republic Servs., Inc., 946 F. Supp. 2d 402, 412-13 (E.D. Pa. 2013)).  Griesing alleges that "Kleinbard's actions negatively impacted the likelihood that [Griesing] would be selected as a prime contractor pursuant to RFPs and whether, even if selected as a prime, [Griesing] would actually be awarded any contracts and assigned any work."  (Compl. ¶ 148.)  Griesing's "own optimism that it would . . . win . . . contracts during the bidding process" does not establish a prospective contractual relationship.  Neopart, 314 F. Supp. 3d at 639.

Moreover—and fatal to its tortious interference claim—any existing contractual right that Griesing alleges Kleinbard impaired is not "between the *plaintiff* and *a party other than the*

*defendant*." Maier, 671 A.2d at 707 (emphasis added).  The LOIs are between Griesing and Kleinbard.  (See Compl. at 31.)  The three OGC contracts are "between Kleinbard and the OGC." (Pl.'s Resp. in Opp'n at 1.)  Griesing is "an intended third-party beneficiary under the [OGC contracts]."  (Doc. No. 18 at 6 n.4.)  Because Kleinbard is a party to all the alleged contracts, it cannot be a proper defendant for a tortious interference claim pertaining to those contracts.  Alpart, 574 F. Supp. 2d at 505.

Griesing's tortious interference claim is not independent of its contract claims and is thus barred by the gist of the action doctrine.  Cola, 745 F. Supp. 2d at 621.  Accordingly, I will grant Kleinbard's Motion as to Count IV.

## V.   CONCLUSION

**AND NOW**, this 7th day of February, 2023, it is hereby **ORDERED** that Defendant Kleinbard's Motion (Doc. No. 14) is **DENIED IN PART** and **GRANTED IN PART** as follows:

1.  Kleinbard's Motion is **DENIED** as to Counts I, II, and III; and

2.  Kleinbard's Motion is **GRANTED** as to Counts IV, V, and VI.


**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
Paul S. Diamond, J.