IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GRIESING LAW, LLC,** : | |
| Plaintiff, : | |
| : | |
| v. : | Civ. No. 22-3302 |
| : | |
| **KLEINBARD LLC,** : | |
| Defendant. : | |

**O R D E R**

Plaintiff Griesing Law, LLC, a would-be subcontractor seeking to provide legal services to the Commonwealth, moves for partial summary judgment against Kleinbard, LLC—a law firm providing such services. Kleinbard moves to dismiss for lack of subject matter jurisdiction, or in the alternative, for summary judgment. (Doc. No. 40.) I will grant Kleinbard's Motion to Dismiss and deny Griesing's Motion.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

The Commonwealth of Pennsylvania regularly employs law firms through its Small Diverse Business Subcontractor Initiative. (Doc. No. 1.) The Griesing law firm—owned by Florida resident Francine Griesing—is an approved Small Diverse Owned Business subcontractor for the Commonwealth. (Id.) The Pennsylvania Office of General Counsel uses these SDB subcontractors and Requests for Proposals to administer Contracts for Legal Services with various firms. (Id.)

From July of 2015 to this suit's 2022 initiation, Kleinbard and Griesing signed letters of intent by which Griesing agreed to serve as Kleinbard's SDB subcontractor on a number of Commonwealth RFPs. (Doc. No. 1 at ¶ 44.) Those LOIs provided, "[i]f Kleinbard, LLC is [successful in procuring Commonwealth contracts under the RFP] . . . Griesing . . . shall provide

1

litigation . . . services . . . [representing] 20% of the total cost . . . ." (Doc. No. 1 Exs. A, B, C, D; see also Doc. No. 1 Ex. F, J.) The undisputed evidence shows that only two of these proposals—OGC-2016CLLC-18 (continued under OGC-2019-CLLC-23) and OGC-2017-GLEC-22—were successful and resulted in contracts. (Doc. No. 1 at ¶¶ 62, 93, Ex. K.; Doc. No. 21-1 Exs. A, B, C; Doc. No. 40-9.) Griesing alleges that having been awarded those contracts, Kleinbard then "excluded Griesing Law from participating in the work or sharing in the fees." (Doc No. 1 at ¶¶ 44-45.) Griesing further alleges that Kleinbard lied to the Commonwealth about Griesing's involvement and abilities. (Id. at ¶ 80.)

On June 27, 2022, Griesing, following the contractually required procedure, submitted a written claim to OGC, raising the "exact claims it is pursuing in [the instant] lawsuit." (Doc. No. 42 at 10, Doc. No. 1 Ex. L.) On August 18, 2022, Griesing filed the instant Complaint, alleging breach of contract, unjust enrichment, tortious interference, fraudulent misrepresentation, and negligent misrepresentation. (Doc. No. 1.) Griesing subsequently moved unsuccessfully to add a defamation claim. (Doc. Nos. 7, 15.)

On October 13, 2022, Kleinbard moved to dismiss. (Doc. No. 14.) I granted the Motion in part and dismissed all Griesing's tort claims. (Doc. No. 20.)

On October 31, 2022, Kleinbard informed OGC that its records indicated Griesing was a subcontractor on OGC 2016CLLC-18 and that another entity—the Axelrod Firm—was the subcontractor on OGC-2017-GLEC-22. (Doc. No. 40-8.) On March 10, 2023, OGC confirmed that Griesing was a subcontractor on only OGC-2016CLLC-18—continued under OGC-2019-CLLC-23—and that Kleinbard was paid a total of $153,667.66 for those two matters. (Doc. No. 40-9.) OGC directed Kleinbard to pay Griesing the full amount contractually required less

$4,314.68—the amount Kleinbard had already paid Griesing.  (Id.)  It appears that neither Party appealed OGC's determination to the Commonwealth Board of Claims.

On March 16, 2023, after receiving the OGC letter, Kleinbard wrote to Griesing, offering $26,418—what was contractually owed less the $4,314.68 already paid.  (Doc. No. 40-13.)  Griesing refused the check.  (Doc. No. 40-14.)  Apparently, Griesing believes (without any evidential support) that it was a subcontractor in all Kleinbard's Commonwealth contracts, and so is entitled to a percentage of the fees Kleinbard earned pursuant to all those agreements.

On March 30, 2023, Kleinbard filed a Motion to Dismiss for Lack of Jurisdiction (based on mootness) and for a Protective Order to Stay Discovery.  (Doc. No. 22.)  In its request for more time to respond, Griesing accused Kleinbard of "unilaterally decid[ing] the amount of damages to which Plaintiff is entitled," stressing its need to depose OGC attorney Theron Perez to establish: (1)"the exact scope of Defendant's services to OGC under RFPs where Plaintiff was a subcontractor," (2) when payments were made to help calculate prejudgment interest, and to (3) "identify other breaches of contracts by Defendant that have damaged Plaintiff to contradict Defendant's 'mootness' argument."  (Doc. No. 24 at 7.)  Kleinbard opposed the extension.  (Doc. No. 26.)  Griesing replied that Mr. Perez's deposition would provide information that would "completely contradict[] . . . OGC's [March 10, 2023] letter to Kleinbard."  (Doc. No. 27.)  I granted Griesing's Motion.  (Doc. No. 28.)

Griesing's statement was not correct.  Mr. Perez did not identify any of the contracts in which Griesing was designated a subcontractor other than those included in the March 10, 2023 letter.  (Doc. No. 40-5 at 141-42.)  Perez instead testified that OGC's March 10, 2023 letter included the "total amount that Kleinbard was paid for matters on which Griesing was identified

3

as the subcontractor." (Doc. No. 40-5 at 141.) Perez further testified that OGC sent the March 10, 2023 letter in part due to Griesing's complaints. (Id. at 142.)

Dissatisfied by Perez's testimony, Griesing then moved for additional discovery, demanding that Kleinbard provide receipts for "all OGC RFP engagements since 2015." I denied the Motion. (Doc. No. 36.)

The apparent absence of supporting evidence notwithstanding, on June 9, 2023, Griesing filed a Motion for Partial Summary Judgment on the issue of liability. (Doc. No. 39.) Kleinbard filed its Motion to Dismiss or in the Alternative for Summary Judgment on the same day. (Doc. No. 40.) The matter is fully briefed. (Doc. Nos. 41, 42, 43, 44.)

## II.  LEGAL STANDARDS

Kleinbard moves to dismiss under Rule 12(h)(3), arguing that Griesing's claims are moot. (Doc. No. 40-1.) The Rule provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Mootness divests the Court of subject matter jurisdiction. See Mollett v. Leicth, 511 F. App'x 172, 174 (3d Cr. 2013).

After a plaintiff makes out standing, the defendant that "claims that some development has mooted the case . . . bears the heavy burden of persuading the court that there is no longer a live controversy." Hartnett v. Pa. State Educ. Ass'n, 963 F.3d 301, 305-06 (3d Cir. 2020) (internal quotation marks omitted). A "case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481 (1982) (internal quotations marks omitted). "A central question in determining mootness is whether a change in circumstances since the beginning of the litigation precludes any occasion for

4

meaningful relief." Old Bridge Owners Co-Op. Corp. v. Twp. Of Old Bridge, 246 F.3d 310, 314 (3d Cir. 2001).

A breach of contract claim becomes moot when the plaintiff is "offered the full amount that she could recover." See Kane v. U-Haul Intern. Inc., 218 F.App'x 163, 169 (3d Cir. 2007); see also Romero v. Allstate, No. 16-4037, 2017 WL 895593, at *4 (E.D. Pa. Mar. 7, 2017) (Under Kane, insurer renders breach of contract claim moot by offering policy limit).

### III.   DISCUSSION

Kleinbard urges that Griesing's claims are moot because "[Griesing] has been provided complete relief, as determined by the OGC pursuant to the exclusive administrative remedy bargained for and agreed to in the applicable agreements." (Doc. No. 40-1 at 7). Griesing argues, *inter alia*, that it is not bound by the exclusive remedy provision, that Kleinbard breached more than the payment provision of the subject contract, and that OGC's calculation could be inaccurate. (Doc. No. 42.) All three contentions are wrong.

   *i.   Contractual Interest*

Griesing is a third-party beneficiary to the contracts for legal services if both the Commonwealth and Kleinbard "expressed an intention that [Griesing] be a beneficiary, and that intention . . . affirmatively appeared in the contract itself." Khan v. Penske Corp., No. 22-4131, 2023 WL 6216524, at *3 (E.D. Pa. Sept. 25, 2023) (citing Scarpitti v. Weborg, 609 A.2d 147, 149 (Pa. 1992)). This is certainly the case here.

From 2015 until the commencement of this action, Griesing agreed to serve as Kleinbard's Small Diverse Owned Business subcontractor on several RFPs "where the parties executed Letters of Intent which Kleinbard included in its RFP submissions to the Commonwealth." (Doc. No. 42-

5

1 at ¶ 14.) Those LOIs provided that if an RFP were successful, Griesing would receive 20% of the contractual payment. (Doc. No. 1 Exs. D, H.)

Two of those RFPs were successful and led to the execution of Contracts for Legal Services between the Commonwealth and Kleinbard, with Griesing serving as subcontractor. (Doc. Nos. 1, 21 at ¶ 44.) In both instances, the Commonwealth sent letters of appointment to Kleinbard stating, "[i]t is understood that you will be subcontracting with Griesing Law, LLC throughout the duration of this engagement." (Doc. No. 1 Exs. E, I.) Because the contracting Parties expressed an intent—included in the engagement letters and the CLSs themselves—that Griesing benefit, it is a third-party beneficiary. Indeed, that is why Griesing had standing to initiate administrative proceedings before the OGC against Kleinbard. As a beneficiary to the contracts between Kleinbard and the Commonwealth, Griesing is necessarily bound by the concomitant contractual obligations.

    *ii.    OGC's Determination*

"It is established law in this Circuit that a third party beneficiary will only be bound by the terms of the underlying contract where the claims asserted by that beneficiary arise from its third party beneficiary status." Comty. Ass'n Underwriters of America v. Rhodes Dev. Grp., Inc., 488 F. App'x 547, 550 (3d Cir. 2012) (internal quotation marks omitted) (citing E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, 269 F.3d 187, 197 (3d Cir. 2001)). In urging that it is not bound by the controversy provision of the CLSs, Griesing attempts to inject ambiguity into the agreements when none exists. (Doc. No. 42.)

Under Pennsylvania law, "the meaning of an unambiguous written instrument presents a question of law for resolution by the court." Donnellan v. Mt. Lebanon School Dist., 377 A.2d 1054, 1056 (Pa Commw. Ct. 1977) (internal quotation marks omitted).

6

Each CLS in which Griesing was a subcontractor contained provisions on subcontracting and claims or controversies.

The subcontracting provision states:

> In the event [OGC approves of the subcontractor], the terms and conditions of this Contract **shall** apply to bind the party or parties to whom such work is subcontracted, assigned, or transferred as fully and completely as the Law Firm is bound and obligated . . . The terms and conditions of this Contract including, but not limited to, the provisions of Appendices C and D, **shall** apply to and bind the subcontractors or experts engaged as fully and completely as the Law Firm is hereby bound and obligated . . . .

(Doc. No. 21 Exs. A, B at ¶ 7 (emphasis added).)  One of the provisions that all subcontractors were bound to follow was the controversy provision which states:

> In the event of a controversy or claim arising from this Contract, the Law Firm must, within six months after the cause of action accrues, file a written notice of the controversy or claim with the General Counsel for a determination.  The General Counsel shall send a written determination to the Law Firm.  The decision of the General Counsel **shall be final and conclusive**, unless, within 15 days after receipt of such written determination, the Law Firm files a claim with the Commonwealth Board of Claims . . . .

(Id. at ¶¶ 25, 26 respectively (emphasis added).)

Griesing contends that this provision does not apply here because the Board of Claims is a "tribunal of limited jurisdiction and that jurisdiction extends to only contract claims involving the Commonwealth as a party." (Doc. No. 42 at 12.)  This is incorrect.  In Tallada v. East Stroudsberg Univ. of Pa. of State System of Higher Educ., the Commonwealth Court ruled that the Board of Claims had jurisdiction over a breach of contract claim filed by a third-party beneficiary of a contract between her employer and the Commonwealth.  724 A.2d 427, 428 (Pa Commw. Ct. 1999).  Similarly in Hunt v. Goeckel, the Commonwealth Court found that the Board of Claims had jurisdiction over employees who claimed they were third-party beneficiaries of a personnel agreement between their employer and the Commonwealth.  713 A.2d 746 (Pa Commw. Ct. 1998).

7

Hunt is one of the instances where "Pennsylvania courts have broadly construed the statute conferring jurisdiction of the Board of Claims." Hanover Ins. Co. v. State Workers' Ins. Fund of Com., 35 A.3d 849, 854 (Pa Commw. Ct. 2012). The controversy provisions thus clearly apply to Griesing, binding it as a third-party beneficiary. See Comty. Ass'n Underwriters of America, 488 F. App'x at 550.

       *iii.*     *The OGC Determination and Kleinbard's Attempt to Pay Offers Complete Relief*

This case is moot because complete relief—as provided by the CLSs—has been determined by OGC and offered by Kleinbard. Kleinbard's March 16, 2023 offer represents the payment that was contractually available to Griesing. (Doc. Nos. 40-13.) It represents the relief that OGC awarded after considering submissions from both Griesing and Kleinbard. (Doc. Nos. 1, 40-8.) Griesing's apparent insistence that it is owed subcontractor fees from other Kleinbard contracts has absolutely no evidentiary support. Griesing has produced no documents—contractual or otherwise—suggesting that it was a subcontractor on any other agreements.

Kleinbard's offer is where this case should have ended. Remarkably, Griesing refused the check and wrote back "it would benefit both sides if you would cease needless posturing at every turn . . . ." (Doc. No. 40-14.)

Griesing disputes mootness, urging that Kleinbard not only breached its duty to pay, but its duty to employ Griesing on 20% of the Commonwealth work and its duty of integrity. (Id.) Griesing further claims that it is entitled to pre-judgment interest arising from the time of the breach. (Id.) These injuries, Griesing contends, are not addressed by OGC's determination. (Id.) Griesing even disputes the accuracy of the Commonwealth's calculation, alleging inaccuracies in its record keeping, although Griesing accepted OGC's resolution of other fee claims Griesing has brought with respect to similar contracts. (Doc. No. 42-1 at ¶ 16; Doc. No. 42-1 at 15 ¶ 45.)

Griesing has shown only that it is not pleased with OGC's decision. That is beside the point. That decision was "final and conclusive" and directed Kleinbard to "confirm . . . full payment due to Griesing Law under the terms of the applicable agreements . . . ." (Doc. Nos. 21 Exs. A, B; 40-9.) Kleinbard has followed this direction. As a third party beneficiary, Griesing is also bound by OGC's determination and this case is moot. See E.I. DuPont de Nemours & Co., 269 F.3d at 195 (binding third-party beneficiary to contract's arbitration provision).

IV.     CONCLUSION

In accordance with OGC's directive, Kleinbard promptly tendered payment to Griesing. (Doc. No. 40-13.) The contract provides that this was final and conclusive. The amount determined by OGC and offered by Kleinbard represents the full relief to which Griesing is entitled. In an abundance of caution, I extended discovery to allow Griesing to depose OGC's principal witness, whose testimony confirmed that Kleinbard has offered to pay Griesing what is contractually owed. It is difficult to accept Griesing acted in good faith when it refused that payment. By the contract's explicit terms, Griesing's continuing belief that it is owed additional subcontractor fees is foreclosed by OGC's "final and conclusive" decision. There is thus no live case or controversy before me.

Accordingly, I will grant Kleinbard's Motion to Dismiss for Lack of Subject Matter Jurisdiction for mootness.

*     *     *

**AND NOW**, this 25th day of April, 2024, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED**.  (Doc. No. 40.)  Plaintiff's Partial Motion for Summary Judgment on the Issue of Liability (Doc. No. 39) is **DENIED**.  The Clerk of Court **SHALL** close this case.

**AND IT IS SO ORDERED**

*/s/ Paul S. Diamond*
Paul S. Diamond, J.