IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GRIESING LAW, LLC,
                Plaintiff,

      v.                             CIVIL ACTION NO. 2:22-cv-03302-PSD

KLEINBARD LLC,
                Defendant.

**RESPONSE IN OPPOSITION OF JULIE NEGOVAN, ESQ. TO DEFENDANT'S MOTION FOR SACTIONS PURSUANT TO 28 U.S.C. § 1927**

Julie Negovan, Esq., counsel for Plaintiff, Griesing Law, LLC (Griesing Law), hereby Responds in Opposition to Defendant, Kleinbard LLC's ("Kleinbard"), Motion for Sanctions pursuant to 28 U.S.C. § 1927 (ECF No. 48) (the "Sanctions Motion") and states as follows:

I.      **INTRODUCTION**

The sole basis for Defendant's Sanctions Motion is Griesing Law's refusal to accept Kleinbard's word, after nine months of intense litigation, that, while Kleinbard admittedly failed to comply with one of the material terms of its contract with Plaintiff, the damages incurred by Griesing Law only amounted to $26,418.85. Kleinbard then issued a check for its unilaterally selected sum, made an offer of judgment, which denied liability (an improper caveat to a judgment), and then argued that Griesing Law's claims were moot. Griesing Law rejected Kleinbard's improper offer of judgment and continued routine and orderly discovery and motion practice in pursuit of its claims.

This Court has now determined that Kleinbard's position was correct and Griesing Law's position was not. However, advocating a losing case for a client does not and should not subject counsel to sanctions –it should not even subject counsel to a motion for sanctions.

The Third Circuit has cautioned that the power to impose sanctions under § 1927 carries

"the potential for abuse, and therefore the statute should be construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *LaSalle Nat'l Bank v. First Conn. Holding Grp. LLC XXIII,* 287 F.3d 279, 289 (3d Cir. 2002) (citations and internal quotation marks omitted).  It noted that courts should exercise this sanctioning power "only in instances of a serious and studied disregard for the orderly process of justice." *Id.* at 288 (citation and internal quotation marks omitted).  Respectfully, there is no basis for any finding of a "serious and studied disregard for the orderly process of justice" against counsel in this case.  Rather, counsel merely sought to uncover the facts underlying 1) Defendant's admitted failure to accurately report to Griesing when and whether work was awarded to Defendant by the Commonwealth under RFIs where Griesing Law was entitled to do 20% of the work; 2) Defendant's admitted failure to pay Griesing Law amounts due under those contracts and 3) the extent to which Defendant was actually awarded work under RFIs where Griesing Law was entitled to do 20% of the work because the Commonwealth's tracking of work awarded was woefully inadequate.

While this Honorable Court has now made a final determination that Defendant's conduct met the requirements of its contractual obligations, there was and continues to be good faith bases for dispute as to the three items outlined above, as well as whether there was adherence to any binding administrative procedures for dispute resolution in the contracts between Griesing Law and Kleinbard.  To that end, Plaintiff has filed a Notice of Appeal to the Third Circuit.  ECF No. 49.

However, nothing in Defendant's Sanctions Motion or the Court's prior rulings supports a finding of bad faith or vexatious litigation against counsel, Julie Negovan.  Therefore, Defendant's Sanction Motion should be denied.

2

## II.   <u>PROCEDURAL HISTORY AND STATEMENT OF FACTS</u>

Plaintiff initiated this action on August 18, 2022 seeking, among other things, recompense from Kleinbard for breaches of at least two and possibly more contracts where Griesing Law was entitled to receive 20% of the legal work awarded to Kleinbard by the Commonwealth.  ECF No. 1.   Griesing Law's bases for its claims against Kleinbard included the undisputed and established facts that:

a)   the Commonwealth and the OGC instituted and utilize the SDB initiative out of recognition that certain businesses were historically underrepresented in the roster of businesses contracted by the Commonwealth.   The initiative is designed to afford SDBs experience contracting with the Commonwealth, so that the SDBs have better prospects at landing prime contracts through the RFP process.  *See id.* at ¶¶ 8-14.  Accordingly, one of Griesing Law's primary motivations in participating in the RFP process as an SDB subcontractor to Kleinbard was the long-term payoff of the gained Commonwealth experience.  *See id.* at ¶¶ 25, 45, 120;

b)   Griesing Law was entitled to 20% of the total cost of an engagement between Kleinbard LLC and the Commonwealth and that the work should represent 20% of the total cost in Kleinbard LLC's cost submittal for the work.  It was "expected that Griesing Law, LLC will receive an estimated $52,750.00 during the initial contract term."  *See id.* at Exhibit F;

c)   Kleinbard did not tell Griesing Law that it had received work from the Commonwealth under the contracts, Kleinbard did not allow Griesing Law to do 20% of the work awarded and Kleinbard did not pay Griesing Law 20% of the amounts Kleinbard was paid under the contracts.

3

On October 13, 2022, Kleinbard filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 14. The Court denied Kleinbard's Motion as it related to the breach of contract claims. ECF No. 20. Following that ruling, the case progressed to the discovery stage.

In discovery, after nine months of active litigation, Kleinbard produced two documents that are central to its Motion for Sanctions. First, Kleinbard produced an October 31, 2022 letter from Kleinbard's Matthew Haverstick to the OGC's Rodney Akers (the "Kleinbard Letter"), which was not copied to Griesing Law at the time. ECF No. 22-2. Second, Kleinbard produced the OGC's Response letter dated March 10, 2023 (the "OGC Letter"), which also was not copied to Griesing Law. ECF No. 22-1.[1]

The Kleinbard Letter states: "[a]ccording to our research, Kleinbard was paid $153,667.66 ***for two matters under contract OGC-2016CLLC-18***," . . . "***for these matters***, Griesing [sic] Law was paid $4,314.68," and "we are willing to discuss resolution with the Griesing Firm of ***any outstanding claims***." ECF No. 22-2 (emphasis added).

In response, the OGC Letter states, "***you indicate*** that Kleinbard was paid $153,667.66 for two matters under contract OGC-2016CLLC-18 (continued under OGC-2019-CLLC-23) . . . ***For these matters, you noted*** that Griesing Law was paid only $4,314.68. ***This payment to Griesing is not sufficient*** to satisfy Kleinbard's commitment ***under the applicable contracts***. Please confirm that the full payment due to Griesing Law under the terms of the applicable agreements has been made, specifying the amount and time of payment(s)." ECF No. 22-1 (emphasis added).

---

[1] The OGC's Response letter states it is in response to Haverstick's "letter dated November 4, 2022." ECF No. 22-1. Additionally, in Mr. Nipun Patel, Esquire's letter enclosing the OGC Letter, Mr. Patel stated: "[e]nclosed herewith, please find Kleinbard's supplemental document production Bates labeled as DEF-000658 containing a letter from the Office Of General Counsel ("OGC") in response to Mr. Haverstick's ***November 4, 2022 Letter***." ECF No. 22-3. No November 4, 2022 letter from Haverstick was ever produced.

4

On June 9, 2023, less than three months after receipt of the OGC Letter, Griesing Law filed a Motion for Partial Summary Judgment on the issue of liability, seeking a determination that Kleinbard: (1) breached its contractual obligations by not paying Griesing Law amounts due under the contracts; (2) breached its contractual obligations to allow Griesing Law the opportunity to do work for the Commonwealth and get experience and exposure; and (3) breached the integrity provisions of the contracts by, among other things, communicating to the OGC that Griesing Law could not do a routine document review.  ECF No. 39.  Kleinbard filed its Motion to Dismiss or in the Alternative for Summary Judgment on the same day, asserting that the OGC Letter constituted an administrative determination of the extent of Kleinbard's liability, which Griesing Law did not appeal to the Board of Claims, therefore mooting Griesing Law's claims, among other things.  ECF Nos. 40.  This Honorable Court entered its order denying Griesing Law's motions and granting Kleinbard's motion on April 25, 2024.  ECF No. 47.  No activity occurred in the case from the date of final briefing of the parties' motions in the summer of 2023 to the date of the final order on April 25, 2024.

Kleinbard now asserts that counsel's failure to immediately dismiss Griesing Law's suit upon receipt of the OGC Letter constitutes sanctionable conduct for vexatious litigation, because this Court has now ruled that the OGC Letter constituted an (apparently *ex parte*) administrative determination that Griesing Law was owed only $26,418.85 in connection with all CLSs Kleinbard executed where Griesing Law was the SDB subcontractor, thereby mooting Griesing Law's claims for additional damages.

### III.   SANCTIONS AGAINST COUNSEL ARE NOT PROPER HERE

To impose sanctions pursuant to § 1927, a court must find that an attorney has "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the

cost of the proceedings; and (4) doing so in bad faith or by intentional conduct." *In re Prudential Ins. Co. Am. Sales Practice Litig.,* 278 F.3d 175, 188 (3d Cir. 2002). While a court has broad discretion in managing litigation before it, "the principal purpose of imposing sanctions under 28 U.S.C. § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." *Id.* (citation and internal quotation marks omitted). To that end, a prerequisite to imposition of sanctions under § 1927 is a finding of "willful bad faith on the part of the offending attorney." *Id.* Indications of bad faith are findings "that the claims advanced were meritless, that counsel knew or should have known this, and that the motive ... was for an improper purpose such as harassment." *Id.* (citation and internal quotation marks omitted).

The Third Circuit has been clear that, "bad faith should not be lightly inferred, and counsel should be given significant leeway to pursue arguments on a client's behalf." *Lewis v. Smith,* 480 F. App'x 696, 699 (3d Cir. 2012). The Third Circuit also has cautioned that the power to impose sanctions under § 1927 carries "the potential for abuse, and therefore the statute should be construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *LaSalle Nat'l Bank,* 287 F.3d at 289 (citations and internal quotation marks omitted). It stated that courts should exercise this sanctioning power "only in instances of a serious and studied disregard for the orderly process of justice." *Id.* at 288 (citation and internal quotation marks omitted). That is, "sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Id.* at 289; *see Hackman v. Valley Fair,* 932 F.2d 239, 242 (3d Cir. 1991) (explaining that, for an attorney's conduct to warrant sanctions pursuant to § 1927, such conduct must be "of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation. The section is directed

6

against attorneys who willfully abuse judicial process.") (citing *Colucci v. N.Y. Times Co.,* 533 F. Supp. 1011, 1014 (S.D.N.Y. 1982)).

> ### A.      Counsel Had Good Faith Bases to Believe and Argue Griesing Law's Claims Were Not Moot

While counsel understands the Court disagrees with Plaintiff's mootness arguments, for purposes of the record, they are set forth here at length to demonstrate the legal and factual support for counsel's good faith belief that Griesing Law's claims were not moot.

A claim is moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of Virgin Islands*, 842 F.3d 201, 208 (3d Cir. 2016) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).  The operative question "is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Jazz Pharms., Inc. v. Synchrony Grp., LLC*, 343 F. Supp.3d 434, 440 (E.D. Pa. 2018) (internal quotation marks omitted).

For a claim to be moot, ***complete relief*** must be afforded such that "it is ***impossible*** for a court to grant any effectual relief whatever to the prevailing party." *Doe I v. Scalia*, 58 F.4th 708, 714 (3d Cir. 2023) (emphasis added) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).  The existence of ***any*** concrete issue, "however small," precludes a finding that the case is moot. *Id.*  It should be no surprise, then, that courts describe the burden of establishing mootness as "heavy, even formidable." S.*F. by K.F. v. Sch. Dist. of Upper Dublin*, No. 17-4328, 2021 WL 1979501, at *10 (E.D. Pa. May 18, 2021) (internal quotation marks omitted) (quoting *DeJohn v. Temple Univ.*, 537 F.3d 301, 309 (3d Cir. 2008)).

    i. *Good Faith Basis Exists to Argue that the OGC Letter Did Not Render Plaintiff's Claims Moot.*

The OGC did not make an independent finding in the OGC Letter; it simply responded to the information provided by Kleinbard and stated the obvious— $4,314.68 does not equal 20% of $153,667.66. *See* ECF Nos. 22-1, 22-2.

The Kleinbard Letter represented to the OGC that the OGC paid it $153,667.66 in connection to OGC-2016CLLC-18 (the November 2016 CLS) which was continued under OGC-2019-CLLC-23 (the December 2019 CLS). ECF No. 22-2. The Kleinbard Letter further represented Kleinbard paid Griesing Law a mere $4,314.68 in connection with these two CLSs. *Id.* Neither Kleinbard's Letter nor Kleinbard's Omnibus Motion offered evidence as to how Kleinbard calculated its payment to Griesing of $4,314.68. *See id.*

In response, the OGC's Laurie Malone stated "you indicate that Kleinbard was paid $153,667.66 for two matters. . . For these matters, you noted that Griesing Law was paid only $4,314.68. This payment to Griesing is not sufficient to satisfy Kleinbard's commitment under the applicable contracts." ECF No. 22-1. Importantly, the OGC Letter neither: (1) confirmed Kleinbard's $153,667.66 figure; (2) stated that those contracts were the only contracts issued pursuant to the relevant RFPs and LOIs between Kleinbard and Griesing Law; nor (3) directed Kleinbard to pay a sum-certain to Griesing Law with interest. ECF No. 22-1.

While counsel recognized the deposition testimony of Mr. Perez regarding the investigation that went into the OGC letter, given the entire history of Griesing Law's communications with the OGC attempting to obtain any definitive answer as to the number of contracts awarded to Kleinbard; the number of contracts awarded to Kleinbard where Griesing Law was the SBD; and the amount of payments for legal services paid to Kleinbard on contracts where Griesing Law was the SDB, it was counsel's good faith belief that there were significant

deficiencies in the OGC's investigation and its March 10, 2023 Letter was not a final determination.[2]

### ii. Counsel Had A Good Faith Basis to Argue that Kleinbard Breached More than Just the Payment Term.

Accepting Kleinbard's admission of its breach of the contract's payment term and submission of its calculation of damages, it only addressed one aspect of Plaintiff's breach of contract claim.  Plaintiff specifically alleged that Kleinbard breached other terms of the LOIs and CLSs (namely, the utilization term, the integrity provision, and the nondiscrimination provision). While this Court has rejected Plaintiff's arguments in its final determination, those arguments had merit and counsel advanced them in good faith.

The relevant LOIs provide not only that Kleinbard must pay Griesing Law 20% of the fees received under the CLS, but also that Kleinbard must utilize Griesing Law for 20% of the services rendered under the CLS.  ECF No. 1 at ¶¶ 44-58.  Griesing Law alleged Kleinbard breached the utilization term in addition to the payment term.  *See e.g., id.* at ¶129 ("Kleinbard failed to provide Griesing Law the opportunity to perform legal services for at least the contractually agreed 20% of the work performed under OGC contracts and failed to pay Griesing Law at least the contractually agreed 20% of the fees.").  By admitting to breach of the payment terms, Kleinbard admitted it failure to utilize Griesing Law to do 20% of the work under the OGC contracts.

The SDB/RFP program was not intended to be a zero-sum game. *See* ECF No. 1 at ¶ 14. SDB subcontractors bargain for the experience in addition to the payments.  *Id.* at ¶¶ 14, 25.

---

[2] For example, but not exclusively, the OGC Letter did not address Griesing Law's claim for interest.  62 PA C.S. § 3933(c) requires all prime contractors of the Commonwealth to pay their subcontractors within 14 days of receiving payment from the agency.  Section 3933(d) requires prime contractors to pay "interest as computed in section 3932(c)."  Kleinbard never offered to pay interest.  The OGC Letter did not determine (1) when Kleinbard had been paid; or (2) when Kleinbard's obligation to pay Griesing Law arose under Section 3933(c); or (3) the amount of interest due under Section 3932(c).

Counsel made the good faith argument that Kleinbard's breach of the utilization term injured Griesing Law. If Kleinbard's breach of the utilization term caused Griesing Law even $1.00 of damages, Kleinbard's payment for breach of the payment term would not afford Griesing Law "complete relief" and its claims would not be moot. *Accord Scalia*, 58 F.4th at 714.[3]

Additionally, the CLS contained the following integrity provision:

> 17. <u>Integrity Provisions</u>. The Law Firm agrees to comply with the Integrity Provisions, which are attached hereto as Appendix G and incorporated by reference.

*E.g.,* ECF No. 21-1 at 9. Appendix G provides, *inter alia*:

> 2. The Law Firm shall maintain the highest standards of honesty and integrity during the performance of this contract and shall take no action in violation of state or federal laws or regulations or any other applicable laws or regulations, or other requirements applicable to the Law Firm or that govern contracting with the Commonwealth.

*Id.* at 25-27. As detailed in the Complaint and supported by the deposition testimony of Ms. Griesing and Ms. Mazzeo, it was counsel's good faith belief that Kleinbard had engaged in a pattern of dishonesty regarding Griesing Law's willingness and ability to perform under the LOIs. ECF No. 1 at ¶¶ 76-77. Counsel asserted on Plaintiff's behalf that Kleinbard's misstatements and dishonesty about Griesing Law constituted a breach of Kleinbard's obligation to "maintain the

---

[3] Damages for breach of the payment term and breach of the utilization term are logically not commensurate. Under the terms of the LOIs and CLSs, as argued by Griesing Law and evidenced by the OGC Letter, the payment term requires the prime to pay the SDB subcontractor at least 20% of fees collected regardless of utilization. *See* ECF No. 16 at 8; ECF No. 22-1. The purpose of the utilization term is primarily to guarantee the SDB subcontractor is afforded the bargained for experience.

highest standard[] of honesty and integrity during the performance of [the] contract."  It was counsel's good faith belief that Kleinbard's breach of the integrity provision injured Griesing Law. If Kleinbard's breach of the integrity provision caused Griesing Law even $1.00 of damages, Kleinbard's payment for breach of the payment term would not afford Griesing Law "complete relief" and its claims are not moot.  *Accord Scalia*, 58 F.4th at 714.

Finally, each of the CLSs contains the following nondiscrimination provision:

> 16.  <u>Nondiscrimination/Sexual Harassment</u>. The Law Firm shall comply with all applicable provisions of state and federal constitutions, laws, regulations, and judicial orders pertaining to nondiscrimination, sexual harassment, and equal employment opportunity, including the provisions of the Nondiscrimination/Sexual Harassment Clause, which is attached hereto as Appendix F and incorporated by reference.

*E.g.,* ECF No. 21-1 at 8.  Appendix F provides, *inter alia*:

> 1.  In the hiring of any employees for the manufacture of supplies, performance of work, or any other activity required under this Contract or any subcontract, the Law Firm, subcontractor, or any person acting on behalf of the Law Firm or subcontractor, shall not, by reason of gender, race, creed, or color, discriminate against any citizen of this Commonwealth who is qualified and available to perform the work to which the employment relates.

*Id.* at 24.  As alleged in the Complaint and supported by the deposition testimony of Ms. Griesing and Ms. Mazzeo, counsel had a good faith basis to argue that Kleinbard had discriminated against Griesing Law on the basis of sex, based upon on its status as a women-owned business.  *See e.g.* ECF No. 1 at ¶¶ 42, 80. This was one of the reasons Plaintiff requested additional discovery of all of Kleinbard's contracts with OGC since 2015, when the SBD program was instituted. Kleinbard's dishonesty concerning its contracts with Griesing Law was not a one-off issue, but

was arguably a systemic, discriminatory practice within Kleinbard. As the Kleinbard Letter and the OGC Letter make clear, Kleinbard admitted that it actually cut out another women-owned SDB subcontractor (the Axelrod Firm, P.C.). *See* ECF Nos. 22-1, 22-2; Exhibit B. Counsel had a good faith basis to argue that Kleinbard's breach of the nondiscrimination provision injured Griesing Law. If Kleinbard's breach of the nondiscrimination provision caused Griesing Law even $1.00 of damages, Kleinbard's payment for breach of the payment term would not afford Griesing Law "complete relief" and its claims would not be moot. *Accord Scalia*, 58 F.4th at 714.

**B.     Counsel Had a Good Faith Basis to Believe Plaintiff Was Not Required to, but nonetheless Did, Exhaust Administrative Remedies Before Initiating this Lawsuit**

Griesing Law ***did*** comply with the relevant contractual pre-conditions of the CLSs (as evidenced by the letters submitted to both Kleinbard and the OGC prior to Griesing Law's filing of this lawsuit, which are contained in the record at ECF Nos. 1-13,1-14, and 1-15). Regardless, there is a good faith basis to argue that the provisions Kleinbard cited concerning administrative determinations of contractual disputes only apply to disputes between a party to the CLS and the Commonwealth. Further, counsel made a good faith argument that Kleinbard waived its pre-conditions argument by not raising it sooner and not engaging with the OGC's investigation (*see* ECF Nos. 1-13,1-14, and 1-1).

> i.     *Griesing Law Submitted a Written Claim to the OGC and Attached the Claim to the Complaint (ECF No. 1-14).*

Griesing Law ***did*** submit a written claim to the OGC and attached the written claim to the Complaint. ECF No. 1 at ¶ 105; ECF No. 1-14. In that written claim, Griesing Law raised the exact claims it is pursing in this lawsuit. Specifically, Griesing Law's claim to the OGC stated:

> For example, the first matter at issue is Commonwealth RFP OGC-2016-22 ▮▮▮▮▮▮▮▮▮▮▮ to which the Commonwealth assigned Kleinbard to serve as ▮▮▮▮▮▮▮▮. We have raised this with OGC and BDISBO, but to assure that you have the full picture, we review the situation here. The Letter of Intent (Appendix G to the Kleinbard RFP submission), dated November 22, 2016 is attached for your ease of reference. We call to your particular attention the following excerpts from the Letter of Intent:
>
> > If Kleinbard is the successful vendor, Griesing Law, LLC shall provide general litigation and emergency counsel support services ...
> >
> > These services represent 20% of the total cost in Kleinbard LLC's cost submittal of the initial term of the contract ... it is expected that Griesing Law, LLC will receive and estimated $52,750.00 during the initial contract term. (Emphasis added.)

*Id.* And, Griesing Law specifically requested the OGC: (1) identify the scope of the fees and work improperly withheld from Griesing Law; and (2) support Griesing Law in receiving the money owed to it under the contracts. *Id.* Based upon Griesing Law's written notice to OGC of its claim against Kleinbard, "OGC ***determined*** that Griesing Law had received only about 4% of the $138,000 fees Kleinbard had received from the OGC Kleinbard Project [and] that Kleinbard owed Griesing Law 20% of at least an additional $85,000 paid to Kleinbard." ECF No. 1 at ¶ 106 (emphasis added); *see also* ECF No. 1 at 107-10.

Moreover, Griesing Law was in regular contact with the OGC prior to the filing of the Complaint. Indeed, the OGC's First Deputy General Counsel Theron Perez, Esquire, the OGC's principal liaison with Griesing Law on the matters at issue, testified that he was aware of the suit, which was encouraged by OGC after Kleinbard did not respond to a Griesing Law proposed tolling agreement that the OGC offered to send and did send to Kleinbard. Thus, counsel had a good faith basis for arguing that not only were pre-condition procedures followed, but the OGC determined that Kleinbard owed Griesing Law money and authorized the Complaint's filing.

It was not until after Griesing Law's suit was filed that Kleinbard engaged with the OGC (without copying Griesing Law), and the OGC Letter was issued on March 10, 2023.  Griesing Law was not a party to any of those communications.  There was no opportunity for Griesing Law to be heard on the information submitted by Kleinbard to the OGC, and the OGC did not even copy Griesing Law on its letter of March 10, 2023, which did not contain any direction for Kleinbard to pay Griesing Law a sum certain.  Counsel had a good faith and common sense basis to believe that the OGC Letter was not a binding final determination as to Griesing Law's claims.

> ii. *Counsel Had a Good Faith Basis to Argue that the CLS Pre-suit Contractual Provisions Did Not Apply*

The "Contract Controversies" provision of the CLS states: "[i]n the event of a controversy or claim arising from ***this Contract***, ***the Law Firm*** must, within six months after the cause of action accrues, file a written notice of the controversy or claim with the General Counsel for determination. . .The decision of the General Counsel shall be final and conclusive unless, within 15 days after receipt of such written determination, ***the Law Firm*** files a claim with the ***Commonwealth Board of Claims***."  ECF No. 21-1 at 10 (emphasis added).

According to its website, the Commonwealth Board of Claims (the "Board") "has exclusive jurisdiction ***to hear and decide claims against the Commonwealth arising from contracts with the Commonwealth***.  It effectively is an administrative court of exclusive original jurisdiction over such claims. It also has ***concurrent jurisdiction*** over contract claims the Commonwealth may have against its contractors…."[4]  In other words, the Board is a tribunal of ***limited jurisdiction*** and that

---

[4] Dep't. of Labor and Indus., *Board of Claims*, https://www.dli.pa.gov/Individuals/Disability-Services/odhh/law-guide/Pages/Board-of-Claims.aspx (last accessed Apr. 13, 2023) (emphasis added).

jurisdiction extends to only contract claims ***involving the Commonwealth as a party***.  *See* 62 Pa.C.S.A. § 1724; *see generally Dudash v. Commonwealth*, 271 A.3d 551 (Pa. Commw. Ct. 2021) (recognizing "[t]he Board of Claims' jurisdiction is limited . . . and is not implicated [in a breach of employment contract dispute].").

Understanding that the Court has rejected this argument, counsel's analysis of the case law supporting Plaintiff's position was sound and she proceeded with these arguments in good faith. Specifically, in the case of *Hanover Ins. Co. v. State Workers' Ins. Fund of Com.*, 35 A.3d 849 (Pa.Cmmwlth. 2012), the Commonwealth Court explained, "The Board was established in furtherance of a public policy extending more than 200 years ago to allow claimants who ordinarily would have been barred by sovereign immunity to have a method of redress **<u>against the</u>** **<u>Commonwealth</u>**." *Citing Lowry v. Commonwealth*, 365 Pa. 474, 76 A.2d 363 (1950)(emphasis added).  Thus, the Board's jurisdiction is limited to claims against the Commonwealth.

Each of the cases cited by the Court in its determination to the contrary involve claims against the Commonwealth, where the plaintiff is claiming third-party beneficiary status of an intermediary's direct contract with the Commonwealth.  *See Tallada v. East Stoudsberg Univ. of Pa. State System of Higher Educ.,*  724 A.2d 427 (Pa. Commw. Ct. 1999)(Tallada filed a case against the University based upon the premise that she was a third-party beneficiary of the contract between her employer and the University, which was determined to be properly before the Board of Claims); *Hunt v. Goeckel*, 713 A.2d 746 (Pa.Comwlth. 1998)(employees of a joint county drug and alcohol program filed an action seeking a declaration that they were third party beneficiaries of contracts between their employer and the Bradford County Department of Health – plaintiffs were employees of a third-party and defendants were county commissioners, thus, the case was properly before the Board of Claims); *Hanover,* 35 A.3d 849 (plaintiff sued the Department of

15

Labor and Industry and the State Workers' Insurance Fund, and needed to be before the Board of Claims).

If Griesing Law had sued the Commonwealth to obtain the benefits of its contract with Kleinbard, that claim could only have been brought before the Board of Claims. But that is not this case. Griesing Law sued Kleinbard. Kleinbard is not the Commonwealth. Kleinbard has no sovereign immunity. Thus, Griesing Law's claim against Kleinbard is not within the jurisdiction of the Board of Claims and Griesing Law cannot be required to bring its suit there.

Further, the Board has only three (3) members: one attorney (who is the "chairman of the [B]oard"), one civil engineer, and one citizen member. 62 Pa.C.S.A. § 1721. The current attorney and Chairman of the Board is Mr. George R. Burrell, who is currently "Of Counsel" at Kleinbard, was formally a managing member at Kleinbard, and a key person identified in Griesing Law's Complaint as Griesing Law's contact at Kleinbard for the RFPs, LOIs and CLSs. *See Board of Claims*, http://www.boc.state.pa.us/ (last accessed Apr. 13, 2023); ECF No. 1 at ¶¶ 56, 66-67, 79, 81, 96-100, 102, 107, 111. Griesing Law should never be required to bring claims against Kleinbard to the Board of Claims in this situation.

Most importantly, Griesing Law communicated continuously with the OGC about its claims against Kleinbard prior to filing the Complaint. At no point did the OGC object and require Griesing Law to proceed before the Board of Claims. Indeed, First Deputy General Counsel urged Griesing Law that the OGC did not want their administrative delays in gathering information about the Kleinbard contracts to cause a delay in Griesing Law filing the Complaint. Thus, counsel had a good faith basis to continue asserting Griesing Law's claims in this action, despite Kleinbard's position (after it was sued) that the claims were required to be a submitted to the Board of Claims.

16

       *iii.   Counsel Had a Good Faith Basis to Assert that Kleinbard Waived its Exhaustion Arguments by Ignoring Griesing Law's and the OGC's Numerous, Pre-Complaint Communications.*

Kleinbard spent months refusing to engage Griesing Law or OGC in addressing Griesing Law's claims prior to institution of the suit.   Griesing Law spent months seeking any communication from Kleinbard concerning the contracts and amounts owed prior to instituting this suit.  Kleinbard ignored every pre-suit communication – even communications from the OGC. Then, upon receiving Griesing Law's complaint, the principal of Kleinbard, Matthew Haverstick, made a statement to the press that the allegations were "lies."   He did not say the claims needed to be determined under administrative rules.  He said they were "lies."  Thus, counsel had a good faith basis to believe that even Kleinbard wanted the claims hashed out in the public forum of this Court and waived any enforcement of a required administrative adjudication.

Under Pennsylvania Law, "waiver may be inferred from silence or acquiescence as from other conduct or inaction."  *Kingsly Compression, Inc. v. Mountain V Oil & Gas, Inc.*, 745 F. Supp.2d 628, 635 (W.D. Pa. 2010) (quoting *Consol. Rail Corp. v. Foster Wheeler Envtl. Corp.,* CIV. A. 99-1642, 2000 WL 1367943, at *16 (E.D. Pa. Sept. 20, 2000)) (holding the defendant's silence and inaction waived the delivery term in a contract where "[a]lthough the final price quotation estimated a delivery period for the Unit of twenty-four to twenty-eight weeks, [the defendant] never insisted upon that delivery period after it signed the lease.").

Griesing Law's Complaint highlights numerous communications to Kleinbard from both Griesing Law and the OGC regarding Griesing Law's claims, which Kleinbard flatly ignored.  *See, e.g.* ECF No. 1 at ¶¶ 81; ECF Nos. 1-13, 1-15.  For example, Griesing Law stated to Kleinbard in a letter dated June 3, 2022:

> To assure that we are made whole promptly, we hereby demand that you provide Griesing the following:
>
> 1. An accounting of all work performed and fees received or billed by Kleinbard (with relevant dates of work and fees received) from the Commonwealth or any other source related to any Commonwealth RFP in which Griesing is a named small business or diverse business subcontractor to Kleinbard for the period from January 1, 2015 to date, including without limitation, all work performed under the subject RFP or on the ███ ██ ███ (collectively, the "Commonwealth Kleinbard/Griesing Subcontracts");
> 2. A check payable to the firm for 20% of all fees paid to Kleinbard for any work performed under any Commonwealth Kleinbard/Griesing Subcontracts, less the $4,315 paid, plus interest on any additional amounts owed to Griesing calculated at 6% per annum from the date on which the amounts were received by Kleinbard; we retain our rights to any fees paid to Kleinbard in the future on any Commonwealth Kleinbard/Griesing Subcontracts; and
> 3. Copies of all documents, in any form, electronic, hard-copy or otherwise, reflecting or relating to any communications by Kleinbard or any former or current employee, partner, representative or agent of Kleinbard, on the one hand, and the Commonwealth or anyone else, on the other hand referring to or commenting on Griesing or any lawyer, partner, manager, agent of representative of Griesing (collectively, "Griesing"), including, without limitation, Griesing's ability, availability, willingness or its purported inability, unavailability or unwillingness to perform under the Letter of Intent or any other RFP in which Griesing was or is a subcontractor to Kleinbard.

ECF No. 1-13.

Not only did Kleinbard not properly raise its "pre-conditions" defense in connection with its prior motion to dismiss, Kleinbard refused to engage with the OGC's investigation. For example, after Griesing Law's June 3, 2022 letter to Kleinbard and Griesing Law's June 27, 2022 letter to the OGC (discussed above), the OGC sent Kleinbard the following:

> ██████ has advised my staff that Kleinbard was paid $138,772.66 for its work under the ██████. At your earliest opportunity, please advise of the amount Griesing Law was paid as a result of that engagement; if that figure is inconsistent with your commitment under the Contract, please explain any discrepancy. Kindly be reminded of the three-year retention period of documents in accordance with paragraph 20 of your Contract.

However, Kleinbard refused to respond to the OGC. *See id.* ¶ 107-108; ECF No. 1-15.

Counsel had a good faith basis to argue that this Court should reject Kleinbard's premise that it can refuse to engage with an administrative process and then later invoke the same administrative process to seek dismissal of Griesing Law's claims.

18

IV.    <u>**CONCLUSION**</u>

The Court's rulings on Griesing Law's motion to supplement the complaint and in granting various motions Kleinbard made in the course of the litigation made clear to counsel that the Court did not look favorably on Griesing Law's claims.  Nevertheless, counsel proceeded in good faith, with full professionalism and without being overly vexatious in the litigation, to obtain a clear determination on the merits of the parties' disputes.

Therefore, counsel respectfully requests that this Court summarily deny Kleinbard's Sanctions Motion.

Dated:  May 10, 2024                    Respectfully submitted,

                                        GRIESING MAZZEO LAW, LLC


                                        */s/ Julie Negovan, Esq.*
                                        Julie Negovan, Esq.
                                        Identification Nos. 81231
                                        1880 John F. Kennedy Blvd., Suite 1800
                                        Philadelphia, PA 19103
                                        (215) 618-3720
                                        (215) 814-9049 [fax]
                                        jnegovan@griesinglaw.com
                                        ***Attorneys for Plaintiff***

19